J-S11014-18
J-S11015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL RICHIE | : | |
| | : | |
| Appellant | : | No. 1781 EDA 2017 |
| | : | |

Appeal from the Judgment of Sentence April 25, 2017
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0002691-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL RICHIE | : | |
| | : | |
| Appellant | : | No. 2275 EDA 2017 |
| | : | |

Appeal from the Order Entered June 5, 2017
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0002691-2016

BEFORE:  OTT, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                                    **FILED APRIL 12, 2018**

Michael Richie appeals from both the judgment of sentence imposed April 25, 2017 (Docket No. 1781 EDA 2017), and the Order entered June 5, 2017 (Docket No. 2275 EDA 2017), in the Delaware County Court of Common

Pleas, following his jury conviction of two counts of indecent assault.[1] On April 25, 2017, the trial court imposed a sentence of 18 to 36 months' imprisonment, followed by two years' probation. Thereafter, on June 5, 2017, the trial court filed findings of fact and conclusions of law in support of its prior determination that Richie met the requirements for classification as a sexually violent predator ("SVP") under Pennsylvania's Sexual Offender Registration and Notification Act ("SORNA").[2] Richie raises two issues on appeal: (1) the Commonwealth's attorney improperly referred to crimes for which Richie was not charged in its closing argument in an effort to inflame the jury, and (2) his classification as an SVP under SORNA is unconstitutional. For the reasons below, at Docket No. 1781 EDA 2017, we affirm in part, reverse in part, and remand for a determination of Richie's registration requirements under SORNA. At Docket No. 2275 EDA 2017, we quash the appeal as improper and duplicative.

The facts underlying Richie's arrest and conviction are summarized by the trial court as follows:

> In December of 2015, [the victim] returned to Chester, Pennsylvania from her present home in Indonesia to surprise her mother for Christmas. She arrived between 5:00 p.m. and 5:30 p.m. on December 25, 2015, went to her mother's house, ate dinner and then decided she wanted to spend time with her mother's brother, [Richie]. [The victim] arrived at the home of Carolyn Thomas, where [Richie] was staying, at approximately

---

[1] 18 Pa.C.S. §§ 3126(a)(1) and (a)(4).

[2] **See** 42 Pa.C.S. §§ 9799.10-9799.42.

- 2 -

10:00 p.m. on December 25, 2015. There, she drank approximately four (4) ounces of red wine, poured by [Richie], before she and [Richie] went three doors down to the home of a friend of [Richie]. From there, [the victim] and [Richie] decided to go to a local bar to purchase beer. They returned from the bar to the home of [Richie's] friend, where [the victim] drank two (2) bottles of Yuengling beer. The beers had been given to [the victim] by [Richie], who had opened them in another room. While consuming the second beer, [the victim] began to feel as though she were drunk, which she testified to be very unusual for her after that amount of alcohol.

[The victim] felt the need to return somewhere she felt "safe," and so she left the friend's home. She returned to Ms. Thomas' home, where she proceeded to the bathroom to vomit. Ms. Thomas testified it was about 12:00 a.m. on December 26, 2015 when [the victim] and [Richie] returned. [The victim] went into the bathroom a second time to vomit, shortly after the first time, and at that point Ms. Thomas intended to have [the victim] stay. Ms. Thomas gave [the victim] a nightgown to wear and had her lie on the couch; Ms. Thomas also gave her a blanket and then retired to the bedroom. [The victim] did not remember changing into the nightgown.

When [the victim] woke up on the couch, in the early hours of December 26, she discovered [Richie's] hands cupping her breasts, outside her clothing. She pushed [Richie] off of her, threatened to break his fingers, and then retreated to the bathroom. At that point, [the victim] still felt unusual ("drugged"), but she changed into her clothes and left to go back to her mother's house. When [the victim] arrived back at her mother's home, she laid down in the recliner and fell back asleep, still feeling "drugged."

When [the victim] awoke, near noon, she went to get herself ready to go out with her mother. While preparing to take a shower, [the victim] realized her vaginal area was swollen. She got into the shower and called out for her mother. When [the victim's] mother entered the bathroom, [the victim] told her what had happened and that she believed [Richie] has assaulted her. At the insistence of her mother, the two women went over to Ms. Thomas' house to confront [Richie]. When they arrived, [Richie] answered the door and [the victim] struck him; she testified he denied doing anything but said he "would never drink again."

After leaving Ms. Thomas' house, [the victim] wanted to "do something normal," so she and her mother tried to go see a movie, which was not showing when they arrived. Ultimately, [the victim] went to the police on December 29, 2015, after having spoken with some friends. When [the victim] arrived at the Upper Chichester police station, she spoke with an officer. Following that conversation, she gave a taped statement to a detective. The officers sent [the victim] to Riddle Memorial Hospital for medical attention, where she underwent a sexual assault examination and was given standard treatment for common sexually transmitted diseases. [The victim] was unable to be given emergency contraceptives ("the morning after pill") or a drug-facilitated sexual assault kit because too much time had elapsed from the assault to her seeking medical treatment.

Trial Court Opinion, 7/31/2017, 1-3 (record citations omitted).

Richie was originally charged with two counts of rape, three counts of aggravated indecent assault and three counts of indecent assault.[3] However, the Commonwealth proceeded to trial only on two counts of indecent assault. *See* 18 Pa.C.S. §§ 3126(a)(1) (without consent) and (a)(4) (person unconscious). Following a three-day trial, on October 27, 2016, a jury found Richie guilty of both charges. That same day, the trial court entered an order directing Richie undergo an assessment by the Pennsylvania Sexual Offenders Assessment Board to determine whether he met the requirements for classification as an SVP under SORNA. *See* Order, 10/27/2016.

On April 25, 2017, the trial court conducted a combined sentencing/SORNA hearing. At the conclusion of the proceeding, the court

---

[3] *See* 18 Pa.C.S. §§ 3121(a)(3) and (a)(4); 3125 (a)(1), (a)(4), and (a)(5); and 3126(a)(1), (a)(4), and (a)(5).

sentenced Richie to a term of 18 to 36 months' incarceration, followed by two years' probation,[4] and determined Richie met the criteria for classification as an SVP, therefore subjecting him to SORNA's lifetime registration requirements. **See** 42 Pa.C.S. § 9799.15(d). Richie filed a timely *pro se* appeal on May 25, 2017, which is docketed at No. 1781 EDA 2017.

Thereafter, on June 5, 2017, the trial court filed findings of fact and conclusions of law in support of its prior determination that Richie should be classified as an SVP. On June 30, 2017, Richie's counsel filed a notice of appeal from the June 5 order, which is docketed at No. 2275 EDA 2017.[5]

Preliminarily, we must address the propriety of the two appeals before us. It is axiomatic that "a direct appeal in a criminal case can only lie from the judgment of sentence." **Commonwealth v. Lawrence**, 99 A.3d 116, 117 n. 1 (Pa. Super. 2014), *appeal denied*, 114 A.3d 416 (Pa. 2015). Here, on May 25, 2017, Richie filed a timely *pro se* notice of appeal from the April 25, 2017, judgment of sentence. However, counsel later filed a second notice of appeal on June 30, 2017, purportedly from the court's "Order entered in

_____

[4] The sentence was imposed on the Subsection (a)(4) conviction for committing indecent assault on an unconscious person. The conviction under Subsection (a)(1) merged for sentencing purposes.

[5] On June 12, 2017, following the filing of the first notice of appeal, the trial court ordered Richie to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The docket indicates the order was served on June 20, 2017. Thereafter, on June 30, 2017, Richie complied with the court's order and filed a concise statement.

this matter on the 5th day of June 2017[.]" Notice of Appeal, 6/30/2017. This second appeal was improper. The "order" from which counsel appealed is not an order at all, but rather, more appropriately designated as an opinion. ***See*** Findings of Fact and Conclusions of Law in Support of Order of April 25, 2017 Finding Defendant a Sexually Violent Predator, 6/5/2017. Therefore, the only appealable docket entry in this case is the April 25, 2017, judgment of sentence, which Richie timely appealed. Consequently, because we conclude the appeal filed at Docket No. 2275 EDA 2014 was both improper and duplicative, we quash that appeal.[6]

The first claim on appeal asserts prosecutorial misconduct during closing arguments. Specifically, Richie argues the trial court erred when it overruled his objection and permitted the Commonwealth's attorney to "strongly allude[] in closing argument that [] Richie had committed the much more serious crimes of Rape, Involuntary Deviate Sexual Intercourse and Aggravated Indecent Assault against the victim but that DNA evidence was not at hand to prove those offenses." Richie's Brief at 11. Because the comments were designed to inflame the jury, Richie insists the court committed reversible error.

_____

[6] We note that on October 19, 2017, Richie filed an application in this Court seeking to consolidate the two appeals. This Court denied the application on November 6, 2017, but directed that the appeals be listed consecutively on a panel, and that the parties file only one brief. ***See*** Order, 11/6/2017. We note Richie's brief does not mention the dual filing, or attempt to explain the propriety of the second notice of appeal.

When considering a claim of prosecutorial misconduct during closing arguments, our review is "limited to whether the trial court abused its discretion." **Commowealth v. Bedford**, 50 A.3d 707, 715 (2012) (quotation omitted), *appeal denied*, 57 A.3d 65 (Pa. 2012).

> Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. **Commonwealth v. Rios**, 554 Pa. 419, 721 A.2d 1049 (1998). Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." **Commonwealth v. Fletcher**, 580 Pa. 403, 434–35, 861 A.2d 898, 916 (2004) (quotation and quotation marks omitted). The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. **Commonwealth v. Faulkner**, 528 Pa. 57, 595 A.2d 28 (1991). Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom. **Commonwealth v. Carson**, 590 Pa. 501, 913 A.2d 220 (2006); **Commonwealth v. Holley**, 945 A.2d 241 (Pa. Super.2008). Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation. **Commonwealth v. Chmiel**, 585 Pa. 547, 889 A.2d 501 (2005).

**Commonwealth v. Jaynes**, 135 A.3d 606, 615 (Pa. Super. 2016), *appeal denied*, 145 A.3d 724 (Pa. 2016).

Here, Richie objects to the following closing comments by the prosecuting attorney:

[Prosecutor:] … Ladies and gentlemen of the jury, this is not a DNA case. And the reason for that is the [Sexual Assault Nurse Examiner] had mentioned, you are not going to get DNA off of the fact that [the victim] awoke with Uncle Richie grabbing her breasts over her clothing. Now just so you know a little bit of background there are unfortunately a lot of different way[s] to commit sexual violence. Now the charge of rape which is not pursued here –

[Defense counsel:] Objection. I am going to object to her mentioning the word rape in her closing.

THE COURT: Well she is saying it is not charge[d], so overruled.

[Prosecutor:] The charge of rape legally means that in an instant when a victim is unconscious is that the penis penetrated the vagina of an unconscious victim, that would be rape. There is another crime, it is called involuntary deviate sexual intercourse. Again not applicable in this case. The Commonwealth would have to prove that a foreign object was inserted into someone's vagina when they were unconscious. Now there is another charge called aggravated indecent assault and that is when the Commonwealth has to prove that there was digital penetration, in other words a finger went inside of a vagina. In that instance as you can imagine, DNA would be relevant. DNA would help the Commonwealth prove a case in this instance. For example if semen was found, we could then move forward on a rape charge. However, there was no DNA. And the Commonwealth recognizes that we cannot meet that high burden, burden beyond a reasonable doubt without the DNA for the charge of rape. However, in this case we are pursuing indecent assault. …

N.T., 10/26/2016, at 136-138.

Richie contends the trial court erred when it overruled his objection to the prosecutor's closing argument because the prosecutor's motive in referencing crimes that were not pursued at trial was to leave the jury with the "impression that [Richie] was escaping accountability for more heinous conduct than that with which he was accused of at trial," and, therefore,

- 8 -

convince the jury to convict him of indecent assault "to make up for the fact

that he was getting away with rape." Richie's Brief at 12, 13. He maintains

the Commonwealth's comments were "obviously designed to inflame the jury

and create an atmosphere of hostility against [him] during their deliberations."

*Id.* at 13. Accordingly, Richie contends he is entitled to a new trial.

> Here, the trial court addressed Richie's argument as follows:

> [T]he Commonwealth utilized some latitude, without exaggerating the evidence or using inflammatory language as to incite the passions of the jurors, to educate the jurors about the lack of DNA evidence in the instant case. The Commonwealth listed the three named charges, specifically telling the jury that those were not applicable to the case, and then explained why they were being illustrated. After the Commonwealth listed each charge, the Assistant District Attorney explained what constitutes that charge, and summarized why those crimes would have DNA evidence versus why the charges which had been lodged against [Richie] would not produce DNA evidence. The closing remarks were within the standards allowing some leniency on counsel's closing arguments and in direct rebuttal to defense counsel's closing argument about the lack of DNA in this case. The Commonwealth's illustration was proper, despite containing reference to crimes for which [Richie] was not charged.

Trial Court Opinion, 7/31/2017, at 7 (record citations omitted).[7]

---

[7] We note the trial court found Richie waived his objection to the prosecutor's reference to the crimes of involuntary deviate sexual intercourse and aggravated indecent assault because he only lodged an objection after the prosecutor mentioned the word "rape," and did not object again when the prosecutor referred to the other crimes. Trial Court Opinion, 7/31/2017, at 7. Because we conclude, *infra*, the prosecutor's comments were a fair response to the defense closing, we need not determine whether Richie was required to object to each separate reference.

We find no basis to disagree. As noted above, a defendant is only entitled to a new trial based upon a prosecutor's comments during closing argument when "the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." ***Jaynes***, ***supra***, 135 A.3d at 615 (quotation omitted). Here, although the Commonwealth's attorney did refer to crimes for which Richie was not on trial, she did not suggest that he should have been charged with, or actually had committed, those crimes. Rather, she referred to those offenses in an attempt to explain the lack of DNA evidence in the case. Considered in context, her comments were a fair response to defense counsel's closing argument. ***See Commonwealth v. Miller***, 172 A.3d 632, 644 (Pa. Super. 2017) ("It is well settled that the prosecutor may fairly respond to points made in the defense closing.") (quotation omitted).

> During his closing statement, defense counsel argued:
>
> Now the Commonwealth is going to get up here in a little bit and say something to the effect of oh we don't need DNA and pandering on and on. But I can tell you if they had it they would be waving it in your face. Since they don't that is my job. All the DNA, no blood, no seminal fluid, no speck of DNA was found on [the victim]. Excuse me let me rephrase that. None of Mr. Richie's DNA, blood, seminal fluid, none of that was found on [the victim]. I would submit to you that is pretty conclusive evidence.
>
> * * * *
>
> Now I have spoken about this stipulated fact [that none of Richie's DNA was detected], and because the defense and the Commonwealth have agreed on this fact, you have to take it as

true. Or you can disregard it, but it is going to tell you in writing that there was no DNA found on the panties, no DNA found anywhere. The other aspect here is that the bra was tested. I am assuming – the Commonwealth didn't bring this out so I have to assume at this point that is the bra that she was wearing the night of the incident. No DNA. It would be there. If [the victim's] version of events that he grabbed with both hands, there would be DNA right there. But we don't have that. The medical report states that no DNA was found, none of [] Richie's DNA was found.

N.T., 10/26/2016, at 131, 134.

In an attempt to rebut defense counsel's argument, the prosecutor explained that DNA evidence would be very relevant in proving certain sexual offenses, such as rape, involuntary deviate sexual intercourse, and aggravated indecent assault. *See id.* at 136-137. However, she emphasized that Richie was **not being tried** for those crimes. Moreover, the prosecutor argued that, based upon the victim's account of the incident,[8] the offense for which Richie was on trial – indecent assault – could be proven beyond a reasonable doubt absent DNA evidence. *See id.* Accordingly, we conclude the trial court did not err in overruling Richie's objection to the prosecutor's closing arguments.

---

[8] The prosecutor stated Richie was accused of grabbing the victim's breasts, over her bra, while she was sleeping. *See* N.T., 10/26/2016, at 139.

- 11 -

Next, Richie contends his classification as an SVP under SORNA, and concomitant lifetime registration requirement, constitutes an illegal sentence. *See* Richie's Brief at 14.  We agree.[9]

Our ruling is based upon two recent appellate court decisions that were filed while Richie's case was pending on direct appeal.[10]  First, on July 17, 2017, the Pennsylvania Supreme Court held in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), that SORNA's registration provisions constitute punishment, and, therefore, the retroactive application of those provisions violates the *ex post facto* clauses of the federal and Pennsylvania constitutions.  Thereafter, on October 31, 2017, a panel of this Court, in *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017), recognized that "*Muniz* was a sea change in the longstanding law of this Commonwealth as it determined that the registration requirements under SORNA are not civil in nature but a criminal punishment."  *Id.* at 1215.  As such, the panel concluded the statutory mechanism for designating a defendant as an SVP set forth in 42 Pa.C.S. § 9799.24(e)(3), which permits a trial court to make the determination based upon clear and convincing evidence, was "constitutionally

_____

[9] We note the Commonwealth concedes Richie is entitled to relief on this claim. *See* Commonwealth's Brief at 19-21.

[10] Although this issue was not raised before the trial court, a challenge to the legality of sentencing may be raised for the first time on appeal, or by an appellate court *sua sponte*.  *See Commonwealth v. Batts*, 163 A.3d 410, 434 (Pa. 2017).

flawed" pursuant to the United States Supreme Court's decisions in ***Alleyne v. United States***, 570 U.S. 99 (2013),[11] and ***Apprendi v. New Jersey***, 530 U.S. 466 (2000).[12] Accordingly, the ***Butler*** panel held: "[T]rial courts cannot designate convicted defendants SVPs (nor may they hold SVP hearings) until our General Assembly enacts a constitutional designation mechanism." ***Butler***, ***supra***, 173 A.3d at 1218. Therefore, the panel vacated the order designating the defendant as an SVP, and remanded the case to the trial court to determine his proper registration period pursuant to 42 Pa.C.S. §§ 9799.14 and 9799.15. ***See id.***

The decision in ***Butler*** compels the same result here. Accordingly, we vacate the judgment of sentence, in part, with respect to Richie's designation as an SVP and his lifetime registration requirement under SORNA. Furthermore, we remand this case to the trial court to determine Richie's proper registration period, and provide notice to Richie thereof as required by 42 Pa.C.S. § 9799.23. In all other respects, however, we affirm the judgment of sentence.

At Docket No. 2275 EDA 2017, appeal quashed.

---

[11] ***See Alleyne***, ***supra*** (any fact that increases the mandatory minimum sentence of a crime is an element that must be submitted to a jury and proved beyond a reasonable doubt).

[12] ***See Apprendi***, ***supra*** (any fact, other than a prior conviction, that increases the penalty of a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt holding

- 13 -

At Docket No. 1781 EDA 2017, Judgment of sentence affirmed in part, and vacated in part.  Case remanded for proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/18