J-A01006-16

2016 PA Super 55

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TAROHN JAYNES | |
| Appellant | No. 2658 EDA 2014 |

Appeal from the Judgment of Sentence April 17, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012926-2011

BEFORE:  LAZARUS, J., OTT, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                    **FILED MARCH 01, 2016**

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following Appellant's conviction on the charges of robbery, possessing an instrument of crime, and person not to possess a firearm.[1]  Appellant contends (1) the trial court erred in failing to suppress the victim's in-and-out-of-court identifications of Appellant as the perpetrator; (2) the trial court erred in limiting defense counsel's cross-examination of Detective Frank Mullen as it pertains to the police's normal protocols for conducting a photo array; and (3) the trial court erred in failing to declare a mistrial due to a statement made by the prosecutor in closing argument that constituted prosecutorial misconduct.  We affirm.

_____

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 907, and 6105, respectively.

*Former Justice specially assigned to the Superior Court.

The relevant facts and procedural history are as follows: On October 15, 2011, at 9:00 p.m., Nathaniel Harley was sitting in his vehicle when an unmasked man entered, sat in the front passenger seat, pointed a gun at him, and rummaged through his pockets, removing two cell phones and cash. Mr. Harley drove to a nearby police cruiser, and once he was inside of the cruiser, he viewed a photo of Appellant on the cruiser's computer screen, which happened to be there as a result of an unrelated matter, and identified the person on the screen as his assailant. At the police station, Mr. Harley identified Appellant from a photo array. Appellant was arrested in connection with the robbery, and he proceeded to a jury trial on various charges. On December 9, 2013, after the jury was unable to reach a verdict on all charges, the trial court declared a mistrial.

The Commonwealth provided notice of its intent to retry the case, and on January 24, 2014, Appellant's counsel filed a motion to suppress all potential witnesses' in-and-out-of-court identifications of Appellant as the perpetrator. Specifically, Appellant alleged the police's out-of-court photo identification procedures were unduly suggestive and there was no independent basis for an in-court identification. On February 11, 2014, the matter proceeded to a hearing, and the trial court denied the motion.

During Appellant's second jury trial, Mr. Harley identified Appellant as the perpetrator of the robbery, and on February 19, 2014, the jury convicted Appellant of the charges indicated *supra*. On April 17, 2014, the trial court

sentenced him to an aggregate of seventeen years to thirty-five years in prison, and on April 23, 2014, Appellant filed a timely post-sentence motion, which was denied by operation of law on August 22, 2014. On September 2, 2014, Appellant filed a counseled notice of appeal, and all Pa.R.A.P. 1925 requirements have been met.

Appellant's first contention is the trial court erred in failing to suppress Mr. Harley's in-and-out-of-court identifications of Appellant as the perpetrator. Specifically, Appellant alleges Mr. Harley's initial out-of-court identification of him was based on an unduly suggestive police display of a single photo, and therefore, Mr. Harley's subsequent out-of-court identification based on a photo array, as well as his in-court identification, were improperly tainted. In this vein, Appellant argues "[t]he demonstration of one picture, immediately after the crime was committed, in the context of an excited and adrenalized report from the victim of a robbery, is clearly fraught with the potential for misidentification." Appellant's Brief at 11.

Initially, we note "[o]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Kearney*, 92 A.3d 51, 65 (Pa.Super. 2014) (quotation and quotation marks omitted).

> [W]e may consider only the evidence of the
> prosecution and so much of the evidence for the

- 3 -

defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

***Commonwealth v. Williams***, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*) (citations, quotations, and quotation marks omitted). Moreover, it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony. ***See Commonwealth v. Clemens***, 66 A.3d 373, 378 (Pa.Super. 2013).

> When determining the admissibility of identification testimony, this Court has held that suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion. **A pretrial identification will not be suppressed as violative of due process rights unless the facts demonstrate that the identification procedure was so infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification.**
> Due process does not require that every pretrial identification of witnesses must be conducted under laboratory conditions of an approved lineup. "In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." ***Commonwealth v. Armstrong***, 74 A.3d 228, 238 (Pa.Super. 2013) (citation omitted).
> Additionally, "the purpose of a suppression order regarding exclusion of identification evidence is to prevent improper police action. Thus, where a defendant does not show that improper police conduct resulted in a suggestive identification, **suppression is not warranted**." ***Commonwealth v. Sanders***, 42 A.3d 325, 330–31 (Pa.Super. 2012)[.]

***Commonwealth v. Lark***, 91 A.3d 165, 168-69 (Pa.Super. 2014) (quotations and quotation marks omitted) (emphasis in original).

Here, as it relates to the police's initial display of Appellant's photo to Mr. Harley, the trial court made the following factual findings:[2]

> Officer Daniel Kostick testified that on the evening of October 15, 2011[,] he was on routine patrol with his partner in a marked police cruiser in the vicinity of 62nd and Arch Streets in the City of Philadelphia. At approximately 9:09 p.m. . . . the complainant, Nathaniel Harley, pulled alongside and reported that he had just been robbed. He instructed Mr. Harley to park his car and get into the police vehicle in order to look for the assailant.
>
> Officer Kostick also testified that when Mr. Harley got into the cruiser he had a picture displayed on his computer screen of a black male, identified as [Appellant], whom he was investigating from the prior evening. On seeing the picture[,] Mr. Harley immediately recognized [Appellant] as his assailant. Realizing that he had forgotten to close the picture in the excitement of the moment, Officer Kostick immediately removed it from view. Officer Kostick explained that on the previous evening he had been on patrol without his partner and had observed [Appellant] acting in a suspicious manner. He was showing the picture to his partner in order for him to be on the

_____

[2] As the trial court noted in its opinion, in lieu of presenting testimony at the February 11, 2014, hearing, the parties agreed to incorporate and rely upon the relevant portions of testimony from Appellant's first trial. Trial Court Opinion, filed 3/3/15, at 9; N.T. Pre-trial Hearing, 2/11/14, at 18-19. However, the certified record provided to this Court does not include the transcripts from Appellant's first trial. ***Commonwealth v. Preston***, 904 A.2d 1 (Pa.Super. 2006) (*en banc*) (indicating waiver of an issue may be found where the appellant fails in his responsibility to ensure the appellate court is provided with necessary transcripts). In any event, inasmuch as the parties and court substantially summarized the relevant testimony during the February 11, 2014, hearing, and the parties do not dispute the trial court's recitation of the relevant factual findings is based on the court's credibility determinations, as well as supported by the testimony presented at Appellant's first trial, we shall address the merits of Appellant's claim.

lookout for him. He testified that it was not his intention for Mr. Harley to see the photograph on his computer screen.

Philadelphia Police Detective Frank Mullen testified that on the evening of October 15, 2011, he was the detective assigned to investigate the robbery of Mr. Harley. Prior to interviewing Mr. Harley, he interviewed Officer Kostick who told him that he had [Appellant's] picture on the screen when Mr. Harley got into his vehicle and "saw [Appellant's] photo on the computer. . . ."

In an abundance of caution and in an effort to further verify Mr. Harley's identification, Detective Mullen prepared a photo array of eight photographs, including [Appellant's]. Prior to being interviewed by Detective Mullen, Mr. Harley viewed the array and immediately identified [Appellant] as his assailant. When he was asked how sure he was of his identification, Mr. Harley replied: "Positive, 100 percent." Mr. Harley also told Detective Mullen that, "[w]hile I was in the car, they had a picture of the guy on their computer already. I told them that it was the guy that robbed me."

In addition to identifying [Appellant] from the photo array, Detective Mullen testified that Mr. Harley told him that he recognized [Appellant] from the neighborhood. He explained that, although he didn't know [Appellant's] name and hadn't seen him for quite some time, he had grown up on the same street, a block away from [Appellant]. This was corroborated by Mr. Harley [at trial].

Trial Court Opinion, filed 3/3/15, at 9-11 (citations to record omitted).

Based on these factual findings, the trial court denied Appellant's motion to suppress, noting "Detective Mullen's testimony corroborated that of Officer Kostick that the display of [Appellant's] picture on the computer screen was accidental and unintentional and did not constitute an improper photo array." *Id.* at 11. We conclude the trial court did not err in this regard.

Appellant did not demonstrate that improper police conduct occurred during his initial out-of-court identification of Appellant. Rather, as the trial

- 6 -

court found, Mr. Harley's viewing of Appellant's photo on the police cruiser's computer screen was inadvertent and not an attempt to utilize a suggestive single photo identification procedure. Rather, Mr. Harley's viewing of the photo was more akin to a spontaneous identification of a suspect, which is M392 A.2d 1294, 1297 (1978).

Intertwined in his first argument, Appellant argues that, immediately after Mr. Harley identified him from the single photo displayed in the police cruiser, "Officer Kostick told [Mr.] Harley that the police were already looking for [Appellant] because of a 'run-in' they had with him on the night before." Appellant's Brief at 13. Appellant argues Officer Kostick's comment "further tainted" Mr. Harley's in-and-out-of-court identifications of Appellant, and therefore, the trial court should have suppressed the identifications.

We find no merit to Appellant's claim. Simply put, this is not a case where the witness saw the perpetrator but did not recognize him. Mr. Harley indicated that, although he did not know Appellant's name, he recognized him from the neighborhood, and in fact, had grown up a block away from Appellant. Accordingly, we find no merit to Appellant's suggestion that Officer Kostick's comment resulted in an identification by Mr. Harley that "was so infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification." **Lark**, 91 A.3d at 168 (emphasis and quotation omitted). **See Commonwealth v. Kubis**, 978 A.2d 391, 397 (2009) (holding that an out-of-court identification based on a

line-up was not suggestive even though, after the witness made his selections from the line-up, a detective indicated that one of the two men the victim chose was the suspect).

Appellant's second contention is that he is entitled to a new trial due to the trial court's error in limiting defense counsel's cross-examination of Detective Mullen as it pertains to the police's normal protocols for conducting a photo array. Specifically, Appellant contends that, when defense counsel attempted to ask Detective Mullen whether it was proper to mention to an eyewitness that the police had a prior "run-in" with the suspect, the trial court improperly *sua sponte* interrupted the cross-examination and informed the jury that the inquiry was not relevant. ***See*** Appellant's Brief at 14 (citing N.T. Trial, 2/18/14, at 62-64). In response, the Commonwealth avers Appellant has waived his claim of error. We agree with the Commonwealth.

In analyzing Appellant's claim, we set forth the following portion of Detective Mullen's cross-examination at trial:

> **[DEFENSE COUNSEL]:** Detective, you certainly would never say anything to suggest that you had any prior contact with anyone that was about to be identified; correct?
> **[DETECTIVE MULLEN]:** I'm sorry. I don't mean to make it difficult. I'm sorry.
> **[DEFENSE COUNSEL]:** Say you had had [*sic*] contact or a run-in with an individual—
> **THE COURT:** How is it relevant what this detective does?
> **[DEFENSE COUNSEL]:** It goes to his knowledge of procedures regarding photo arrays, Judge.
> **THE COURT:** It's not relevant. There's an argument to be made that seeing the photograph in the police car suggested to the complainant, to the victim that that [*sic*] person in the photograph was the robber. And by the police officer saying, if

- 8 -

in fact he did say this--and I don't know that it's been established exactly what the facts are as to what happened in that police car. But if you believe that the police officer said, well, it's up there because of a run-in we had with him last night, the argument could be made that all of that is suggestive. That you're taking a victim and suggesting to the victim of all the millions of people in the world who might have robbed him that night, the guy in that photograph is the guy.

But what detectives would normally do or what police officers in general would normally do really isn't relevant. Because you're not here to decide what police officers generally do or normally do. You're not here to decide the other--I don't know how many thousands of cases this detective has worked on or the police officers in this case have worked on. All you're looking at is this case. The facts of this case. So first you have to find facts. What happened in that police car? And then you have to decide was that suggestive? And then ultimately you have to decide whether the identification made by the victim of [Appellant] is the result of that suggestion or if he knows what he's talking about when he says this is the guy who robbed me. So it's really not relevant what this detective normally does.

**[DEFENSE COUNSEL]:** I think you covered it adequately, Your Honor. I appreciate that.

**THE COURT:** Okay.

N.T. Trial, 2/18/14, at 62-64.

As is evident, defense counsel did not object to the trial court's interruption or subsequent instruction to the jury. Therefore, this issue has been waived on direct appeal. *See Commonwealth v. Pearson*, 685 A.2d 551 (Pa.Super. 1996) (*en banc*) (indicating the failure to raise a timely objection at trial waives the claim on appeal); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In his final contention, Appellant argues the trial court erred in failing to declare a mistrial due to a statement made by the prosecutor in closing

argument that constituted prosecutorial misconduct. Specifically, he argues a mistrial was warranted due to the prosecutor improperly asking the jury to "put themselves in the victim's shoes" and render a verdict based on sympathy for the victim. We find no relief is due.

In analyzing Appellant's claim, we set forth the following relevant portions from the prosecutor's closing argument:

> **[PROSECUTOR]:** As I was saying, when Mr. Harley started this case, he testified the first time in this case in November of 2011. And he did not have to sit across from [Appellant]. He did not have to look at him and identify him because he wasn't in the room. And so Mr. Harley got up there and told the judge what happened without hesitation[,] without fear for his small children. But what happened after that day? That same afternoon when Mr. Harley finished testifying? We not only know what happened from Mr. Harley. You heard it on the phone call of [Appellant]. He took care of it. He talked to him and took care of it. And so now I'm good. **Would you be afraid if you lived around the corner with two small kids?** So that's what happened, ladies and gentlemen.
>
> **[DEFENSE COUNSEL]:** Objection.
>
> **THE COURT:** What's the basis?
>
> **[DEFENSE COUNSEL]:** For the jury to put themselves in the shoes of the victim.
>
> **THE COURT:** That's a good point. That's a term, phrase that's not appropriate in the trial. You know, how would you feel? How do you identify the victim in the case in any way? Obviously if he were the victim in this case, he wouldn't be sitting on the jury. He wouldn't be qualified to sit on a jury. So it's a term and phrase that we use in everyday discussions, possibly: How would you feel? It's not appropriate at trial. You should refrain from saying things like that.
>
> **[PROSECUTOR]:** Sure. You heard from Mr. Harley. When he came to testify in December, he was afraid. So afraid that he hid from his house. He left his home for several days because he did not want to come in here. He came in but he still wasn't going to do it. He was not going to put his family and himself in danger. And so he tried every which way to throw the case, as he testified. He talked to people on the street. They

- 10 -

gave him ideas. Every which way he could figure out because he was scared. And he told you that honest[l]y when he testified in front of you the other day.

N.T. Trial, 2/18/14, at 112-14 (emphasis added).

Moreover, at the conclusion of closing arguments, after the jury was excused, the following relevant exchange occurred:

> **[DEFENSE COUNSEL]:** Could I put one brief thing on the record?
> **THE COURT:** Yes.
> **[DEFENSE COUNSEL]:** I didn't want to ask for a mistrial in front of the jury. I would respectfully ask for a mistrial at this point.
> **THE COURT:** What else do you want me to say?
> **[DEFENSE COUNSEL]:** That's the thing. There's not really a further instruction you can give that would cure asking a jury to put themselves in the shoes of a victim. For that reason I would be asking for a mistrial.
> **THE COURT:** I'm not going to reconsider my ruling. But my understanding is that curative instructions include just about everything including this. So the bottom line, if she had said it a slightly different way; if she said, You can understand what person would not be concerned instead of saying, Wouldn't you will [*sic*] be concerned. It's just the term as phrased. I can cover it again in my closing instruction if you want me to do that.
> **[DEFENSE COUNSEL]:** I think that just raises more attention to it. So I'm not asking for that.
> **THE COURT:** Then your motion is denied.

*Id.* at 118-20.[3]

---

[3] We note that Appellant's request for a mistrial has been properly preserved notwithstanding the fact that defense counsel waited until the end of the prosecutor's closing argument to move for a mistrial. ***See Commonwealth v. Rose***, 960 A.2d 149 (Pa.Super. 2008) (indicating objection coupled with request for a mistrial preserves denial of the mistrial for appellate review
*(Footnote Continued Next Page)*

The following standards govern our review of the denial of a motion for mistrial:

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

***Commonwealth v. Lettau***, 955 A.2d 360, 363 (Pa.Super. 2008), *reversed on other grounds*, 604 Pa. 437, 986 A.2d 114 (2009) (citations, quotations, and quotation marks omitted).

Moreover, with specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. ***Commonwealth v.***

*(Footnote Continued)* _____

even where such is made at the conclusion of the prosecutor's closing argument).

*Correa*, 664 A.2d 607 (Pa.Super. 1995). Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. ***Commonwealth v. Rios***, 554 Pa. 419, 721 A.2d 1049 (1998). Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." ***Commonwealth v. Fletcher***, 580 Pa. 403, 434-35, 861 A.2d 898, 916 (2004) (quotation and quotation marks omitted). The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. ***Commonwealth v. Faulkner***, 528 Pa. 57, 595 A.2d 28 (1991). Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom. ***Commonwealth v. Carson***, 590 Pa. 501, 913 A.2d 220 (2006); ***Commonwealth v. Holley***, 945 A.2d 241 (Pa.Super. 2008). Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of

the arguments advanced by the defense in summation. ***Commonwealth v. Chmiel***, 585 Pa. 547, 889 A.2d 501 (2005).

In the case *sub judice*, the defense was largely based on misidentification, and more specifically, the defense actively sought to call into doubt the accuracy of Mr. Harley's in-and-out-of-court identifications of Appellant as the perpetrator. The defense attorney's closing included argument that Officer Kostick suggestively showed Mr. Harley a single photo (that of Appellant) immediately following the robbery and that Mr. Harley subsequently chose Appellant's photo from an array only because he had previously seen the single photo of Appellant. N.T. Trial, 2/18/14, at 98-102.

In response, in arguing Mr. Harley did not misidentify Appellant as the perpetrator, the prosecutor explained that, at a November 2011 hearing, Mr. Harley identified Appellant as the perpetrator, and later that day, Mr. Harley was threatened in an effort to keep him from testifying. As a result of the threat, and because he lived around the corner from Appellant with two small children, Mr. Harley was afraid, resulting in him not wanting to testify. However, despite his fear, Mr. Harley appeared and testified at Appellant's jury trial.

Contrary to Appellant's claim, the prosecutor's comment was not an attempt to have the jury render a verdict based on sympathy for the victim; but rather, it constituted an attempt at explaining that, despite the threat

and fear, Mr. Harley continued to identify Appellant as the perpetrator. Accordingly, when viewed in context, the prosecutor's sole statement did not constitute prosecutorial misconduct and the trial court did not abuse its discretion in denying Appellant's request for a mistrial. **Correa**, **supra**.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/1/2016