J-S48026-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEROME P. MCNEILL | : | |
| | : | |
| Appellant | : | No. 2484 EDA 2018 |

Appeal from the Judgment of Sentence Entered April 6, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0014149-2014

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.:               **FILED OCTOBER 22, 2019**

Jerome P. McNeil ("Appellant") appeals from the judgment of sentence[1]

entered after a jury found him guilty of indecent assault.[2]  We affirm.

The trial court summarized the relevant facts and procedural history of

this case as follows:

> On the evening of October 13, 2014, the complainant, C.T., arrived in Philadelphia for a work conference.  The conference took place at the Loews Hotel, located in Center City, Philadelphia, where C.T. stayed as a guest.  Following meetings on October 16, 2014, C.T. and her colleague, J.C., scheduled massage

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  Appellant purports to appeal from the August 1, 2018 order denying his post-sentence motion.  However, his appeal properly lies from the April 6, 2018 judgment of sentence.  ***Commonwealth v. Lawrence***, 99 A.3d 116, 117 n.1 (Pa. Super. 2014).  We have corrected the appeal paragraph accordingly.

[2]  18 Pa.C.S. § 3126(a)(1).

appointments at the hotel spa for that afternoon. C.T.'s massage was scheduled for 4:15 p.m., immediately following J.C.'s appointment. Notes of Testimony ("N.T."), 9/28/2017 at 9–13, 82.

When C.T. arrived at the spa, she filled out a client intake form, changed into a robe, and waited in the changing area. Shortly thereafter, J.C. exited the massage room with [Appellant]. [Appellant] brought C.T. into the massage room and directed her to remove her robe and get under the sheets on the table. [Appellant] then left the room. When [Appellant] returned, C.T. was lying face-down on the massage table. *Id.* at 18–24.

[Appellant] began massaging [C.T.'s] upper left shoulder at a quick pace. He moved down C.T.'s body, eventually massaging her feet and legs. When [Appellant] began massaging [C.T.'s] buttocks, C.T. noticed that his hands were close to her vaginal area. She felt her pubic hair being tugged. C.T. then felt [Appellant's] finger go inside of her vagina. He moved to the other side of C.T.'s body and again placed his finger inside of her vagina. At this point, C.T. pushed herself off of the table and told [Appellant] to stop. He responded that the massage was nearly finished. When the massage ended a couple of minutes later, [Appellant] retrieved C.T.'s necklace for her and placed it around her neck. He left the room and returned with a glass of water. C.T. quickly got dressed in the locker room and went to the reception area to pay, while [Appellant] waited across from her. *Id.* at 25–37.

[Several hours later, after attending a company dinner in the Loews Hotel, C.T. reported the assault to a hotel security officer. The security officer contacted the police. A Philadelphia police officer responded and directed C.T. to the Special Victims Unit, where C.T. spoke with Detective Keenya Taylor and identified Appellant from a photo array. N.T., 9/28/17, 49–57, 141–146. C.T. also underwent a sexual assault exam. Id. at 56–66, 180–195. Appellant was arrested on October 17, 2014, and charged with sexual assault, recklessly endangering another person, aggravated indecent assault, and indecent assault.[3]]

---

[3] 18 Pa.C.S. § 3124.1, 2705, 3125(a)(1), and 3126(a)(1) respectively.

After the jury rendered their verdict, [the trial c]ourt deferred sentencing until April 6, 2018 for completion of a presentence investigation. On that date, [Appellant] was sentenced to two years of sex offender probation. On April 13, 2018, [Appellant] filed a post-sentence motion, claiming the verdict was against the weight of the evidence. [The trial c]ourt denied the post-sentence motion on August 1, 2018. On August 8, 2018, [Appellant] filed a timely Notice of Appeal to the Superior Court. On August 9, 2018, [the trial c]ourt ordered [Appellant] to file a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one days. [Appellant] filed a Rule 1925(b) statement on August 28, 2018.

Trial Court Opinion, 3/8/19, at 1–2.

Appellant presents the following questions for our consideration:

I. Did the trial court err in failing to permit Appellant to cross-examine the complainant about the fact that she had received a financial settlement from [Appellant's] employer, Loew's [sic] Hotel?

II. Did the trial court abuse its discretion in ruling that the Commonwealth could introduce the testimony of three prior bad act witnesses whom Appellant had allegedly indecently assaulted as common scheme/plan evidence where the claimed assaults were not sufficiently similar to establish a distinctive *modus operandi* and where the testimony of the three witnesses was cumulative, duplicative, and unduly prejudicial?

III. Did the trial court err in denying Appellant's request for a mistrial based on prosecutorial misconduct where the prosecutor improperly suggested Appellant might have assaulted additional victims who had not come forward, referenced the failure of the justice system to protect one of his alleged victims, and asked the jury to convict Appellant in order to prevent him from committing additional crimes?

IV. Was the verdict contrary to the clear weight of the evidence where the Complainant's testimony regarding the nature of the alleged assault was inconsistent with earlier statements

- 3 -

> she had made in the course of a civil suit she filed related to the same incident?

Appellant's Brief at 5–6 (full capitalization omitted).

Appellant's first two issues implicate the trial court's authority to exclude or admit evidence. Our standard of review is well settled:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015).

Appellant first complains that the trial court did not allow him to cross-examine C.T. about whether she entered a financial settlement with the Loews Hotel. Appellant's Brief at 13. Appellant argues, "[T]he jury should have been told that C.T. had successfully sued Loew's [sic] and received an undisclosed amount of money from the hotel, since this evidence would have suggested a financial motive for her to falsely implicate [A]ppellant in a sexual crime." Appellant's Brief at 16. In response, the Commonwealth contends:

> The jury was aware that . . . the victim had sued Loew's [sic] and had agreed to discontinue the suit after being compensated. It is only the amount of compensation that [Appellant] was prohibited from eliciting . . . [because] the amount simply was not relevant to any bias to shade [C.T.'s] testimony at the time of [Appellant's] trial.

Commonwealth's Brief at 15–16.

Introduction of the existence of a civil suit in a criminal case is permissible "to show the complainant's possible bias and interest in the outcome of the case." **Hanford**, 937 A.2d 1094, 1099 (Pa. Super. 2007); **see also** Pa.R.E. 408 (governing use of evidence of compromise offers and negotiations). However, "[t]he scope of cross-examination is a matter left to the sound discretion of the trial court, and the trial court's rulings will not be disturbed absent an abuse of discretion." **Commonwealth v. Boczkowski**, 846 A.2d 75, 96 (Pa. 2004).

Relying on the record, the trial court rejected Appellant's first claim:

> As a preliminary matter, this [c]ourt *did* permit [Appellant] to question C.T. about the existence of her civil suit against Loews Hotel and whether the hotel admitted liability. N.T., 9/28/2017 at 129, 134–[1]35. This [c]ourt properly prevented defense counsel from inquiring about the amount of money C.T. received as a result. *See Commonwealth v. Hanford*, 937 A.2d 1094, 1099 (Pa. Super. 2007) (preventing inquiry into specific facts alleged in the civil complaint as irrelevant to establishing bias or motive, while allowing questions relating to the existence and grounds of the civil suit in order to show possible bias and interest in the outcome of the case). Moreover, as opposed to *Hanford*, the civil suit in the instant case was discontinued prior to trial, eliminating any potential financial motive for C.T. to falsely testify against [Appellant]. Accordingly, this [c]ourt did not abuse its discretion by limiting the scope of questions relating to the civil suit.

Trial Court Opinion, 3/8/19, at 3 (emphasis in original).

Upon review, we consider Appellant's first claim of error meritless. During the morning session on the second day of trial, defense counsel cross-examined C.T. about her civil lawsuit against the Loews Hotel, the spa, and

Appellant. During cross-examination, the following exchange took place between defense counsel and C.T.:

BY [DEFENSE COUNSEL]:

Q. Let's go to, you testified that you have a suit against Loews?

A. I had a suit against Loews, yes.

Q. The suit is closed?

A. It was discontinued.

Q. Discontinued. Did you settle?

A. We discontinued it.

Q. What do you mean by discontinued?

A. I agreed to stop suing them, basically.

Q. And did they pay you money?

A. Your Honor, I had to sign a waiver of confidentiality. I don't know how that --

N.T. Trial, 9/28/17, at 114–115. When defense counsel continued to question C.T. about receiving money under the agreement to discontinue, the Commonwealth objected. *Id.* at 115. The trial court sustained the objection but agreed to look at the issue during the lunch break. *Id.* Before the lunch break, both parties presented case law and argued to the trial court about the admission of financial settlement evidence. *Id.* at 123–129. In response, the trial court limited further cross-examination to whether the Loews Hotel admitted liability. *Id.* at 129–130. Nevertheless, defense counsel continued his cross-examination as follows:

BY [DEFENSE COUNSEL]:

Q. But you sued them for over four million dollars, didn't you?

A. We did not ask for an amount in the suit. It was more than just the Loews. It was [Appellant] and the spa and Loews.

Q. You didn't settle with [Appellant], did you?

A. We discontinued the case. We didn't settle with [Appellant].

Q. But the other people paid you; is that correct?

A. I'm not allowed to discuss it.

*Id.* at 115, 116.

Contrary to Appellant's assertion, defense counsel twice cross-examined C.T. about receiving money under the agreement to discontinue. However, in both instances, C.T. declined to comment because of a confidentiality provision. Furthermore, C.T. discontinued her civil suit by agreement before Appellant's criminal trial, thereby eliminating any potential that C.T.'s testimony against Appellant was based on financial motives. *Compare Shaffer v. Smith*, 673 A.2d 872 (Pa. 1996) ("[A] criminal conviction collaterally estops a defendant from denying his acts in a subsequent civil trial."). Moreover, the jury was free to assess C.T.'s credibility in light of a potential financial benefit to her arising from the agreement to discontinue. *See Commonwealth v. Alicia*, 92 A.3d 753, 761 ("The veracity of a particular witness is a question which must be answered in reliance on the ordinary experiences of life, common knowledge of the natural tendencies of human nature, and observations of the character and demeanor of the

witness.") (quoting **Commonwealth v. Davis**, 541 A.2d 315, 317 (Pa. 1988)). Thus, Appellant's first claim does not warrant relief.

Appellant's second claim of error involves the trial court's pretrial ruling that permitted the Commonwealth to introduce evidence of three prior sexual assaults by Appellant. Appellant's Brief at 18. Appellant asserts that the other "alleged acts were not sufficiently similar or logically connected" to the incident involving C.T. as to make evidence of them admissible as part of a common scheme or plan. Appellant's Brief at 18. Appellant relies on **Commonwealth v. Semenza**, 127 A.3d 2 (Pa. Super. 2015), and **Commonwealth v. Ross**, 57 A.3d 85 (Pa. Super. 2012), as "instructive with regard to the degree of equivalence required to conclude that two crimes are sufficiently similar to constitute evidence of a common scheme or plan[.]" Appellant's Brief at 24, 28. According to Appellant, "only those factors that truly distinguish a defendant's behavior from run of the mill generic actions common to a class of criminals or crimes will establish the existence of a common plan as that term is used in Rule 404(b)." **Id.** at 32. Additionally, Appellant argues that he did not present a defense of "mistake" at trial and, therefore, admission of the prior acts for that purpose was an abuse of the trial court's discretion. **Id.** at 18 n.1.

The Commonwealth counters that the prior acts were sufficiently similar to Appellant's assault on C.T. to be admissible for the purposes of establishing a common plan or scheme. Commonwealth's Brief at 18. According to the

Commonwealth, the cases Appellant cites are not relevant because they involve "signature" evidence to establish identity of the assailant or differences in the very nature of the various assaults committed. *See id.* at 26, 28 (distinguishing *Ross* and *Semenza*). In contrast, the Commonwealth claims: "Here, there were ample similarities to permit the admission of the Montgomery County assaults as evidence of a common plan, particularly in the relationship of the victims to [Appellant] and the progression of the massage." *Id.* at 30. Regarding the absence of mistake, the Commonwealth asserts two positions: First, Appellant raised "mistake" at the pretrial hearing on the Commonwealth's motion *in limine* and therefore, the trial court could admit the evidence for that purpose. *Id.* at 31. Second, the Commonwealth had to prove the absence of mistake in order to establish aggravated indecent assault, *i.e.*, that Appellant was not merely negligent in touching C.T.'s genitals, and indecent assault, *i.e.*, that Appellant touched C.T.'s genitals for the purpose of sexual gratification. *Id.* at 32.

When an appellant challenges the grant of a motion *in limine*, our scope of review is limited to the relevant pretrial hearing transcripts. *See In re Interests of L.J.*, 79 A.3d 1073, 1088-1089 (Pa. 2013) (noting that our scope of review is limited to the evidence presented at the pretrial hearing). Moreover, "[a]ll relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable

or supports a reasonable inference or presumption regarding a material fact."
***Commonwealth v. Tyson***, 119 A.3d 353, 358 (Pa. Super. 2015) (*en banc*)
(citation omitted).  Evidence will not be excluded merely because it is harmful
to a defendant's case.  ***Commonwealth v. Kouma***, 53 A.3d 760, 770 (Pa.
Super. 2012).  "The trial court is not required to sanitize the trial to eliminate
all unpleasant facts … where those facts are relevant to the issues at hand[.]"
***Commonwealth v. Hairston***, 84 A.3d 657, 666 (Pa. 2014) (citation and
internal quotations omitted).

Evidence of a crime, wrong, or other act "may be admissible" to prove
"motive, opportunity, intent, preparation, plan, knowledge, identity, absence
of mistake, or lack of accident.  In a criminal case this evidence is admissible
only if the probative value of the evidence outweighs its potential for unfair
prejudice."  Pa.R.E. 404(b)(2).  "'Unfair prejudice' means a tendency to
suggest decision on an improper basis or to divert the jury's attention away
from its duty of weighing the evidence impartially."  ***Commonwealth v.***
***Dillon***, 592 Pa. 351, 366, 925 A.2d 131, 141 (2007) (quoting Pa.R.E. 403
comment).

Although not included among the permissible uses in Rule 404(b)(2),
prior bad acts evidence may be admitted to assist in "proving the existence of
a common scheme[.]" ***Commonwealth v. Arrington***, 86 A.3d 831, 842 (Pa.
2014).  Mere similarities between a defendant's prior bad acts and the crimes
for which he is being tried will not qualify for a Rule 404(b)(2) exception.

*Commonwealth v. Sitler*, 144 A.3d 156, 163 (Pa. Super. 2016) (*en banc*).

Rather, to qualify for an exception to Rule 404(b)(1)'s general prohibition, the

prior bad acts must have a "close factual nexus sufficient to demonstrate

the[ir] connective relevance" to the crime in question.  *Commonwealth v.*

*Ross*, 57 A.3d 85, 104 (Pa. Super. 2012) (*en banc*).

> When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct[,] which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive.

*Tyson* , 119 A.3d at 358–359 (quoting *Commonwealth v. G.D.M., Sr.*, 926

A.2d 984, 987 (Pa. Super. 2007)).

Having determined that the prior bad acts were relevant, the trial court:

> must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

***Tyson***, 119 A.3d at 359 (quoting ***G.D.M., Sr.***, 926 A.2d at 987).

"Additionally, when examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence.... Jurors are presumed to follow the trial court's instructions." ***Id.*** at 360 (quoting ***Commonwealth v. Hairston***, 84 A.3d 657, 666 (Pa. 2014)).

In the case at hand, following a hearing on July 14, 2017, the trial court granted the Commonwealth's motion *in limine*, allowing the prior bad acts "for common plan and absence of mistake, and also making a finding that the probative value outweighs the prejudicial impact on [Appellant]." Order, 8/14/17. The trial court expanded on the reasons for its ruling with the following analysis:

> This [c]ourt granted the Commonwealth's motion to admit prior bad acts,[4] finding the evidence admissible to prove a common plan or scheme and absence of mistake. This [c]ourt also determined that the probative value of the evidence outweighed the prejudicial impact. N.T. 8/14/2017 at 4. At trial, three witnesses described their experiences of being sexually assaulted by [Appellant] at the Hand and Stone Massage and Facial Spa in Haverford, Pennsylvania.
>
> The first witness, J.J.C., testified that beginning in the spring of 2014, she received monthly massages from [Appellant] at the Hand and Stone Massage and Facial Spa in Haverford, Pennsylvania. Toward the end of the third massage, [Appellant] was massaging J.J.C.'s inner thigh when he lifted up her underwear, exposing her buttocks. J.J.C. then felt [Appellant's] fingers touch the outside of her genital area. She told [Appellant]

---

[4] The Commonwealth filed a "Motion to Admit Other Crimes Evidence" on January 23, 2017, and an amended motion on May 5, 2017. Following a hearing on July 14, 2017, the trial court granted the Commonwealth's motion. Order, 8/14/17.

to stop. He complied and continued the massage for a couple of minutes. [Appellant] left the room while J.J.C. got dressed. When he returned, [Appellant] told J.J.C. that he felt there had been a misunderstanding and that he believed J.J.C. "was okay with it." N.T. 9/28/2017 at 155–58, 163–69.

The second witness to testify was S.G. In July of 2014, S.G. received a massage from [Appellant]. When [Appellant] finished massaging S.G.'s back, he turned S.G. over and began massaging his upper thigh area, close to his underwear. [Appellant] then placed his hand underneath S.G.'s underwear and touched his penis. S.G. asked [Appellant] to stop and to finish massaging his shoulders. Afterwards, [Appellant] apologized and said that "he had misunderstood what S.G. wanted." N.T. 9/29/2017 at 10–12, 17–21.

The third witness, D.C., testified that she received a massage from [Appellant] in the spring of 2014. Midway through the massage, [Appellant] began pushing his body against D.C.'s side. While D.C. was on her stomach, [Appellant] massaged her thighs. He then moved his hand upward and inserted his finger inside of D.C.'s vagina. [Appellant] also rubbed D.C.'s breasts. *Id.* at 42–47.

The following factual similarities exist between the present case and [Appellant's] prior sexual assaults. In each case, the victim received a massage from [Appellant] at his place of employment. The victims were either nude or wearing only underwear at the time of the massage. In each case, [Appellant] went from massaging the upper thigh area to touching the genitals of each victim. Lastly, these incidents occurred within months of each other, beginning in the spring of 2014 and concluding on October 16, 2014, when [Appellant] assaulted C.T. The similarities make these four incidents nearly identical, showing a common plan or scheme, and making the testimony of the three witnesses highly probative. Moreover, these prior incidents were also admissible to rebut a claim that [Appellant] mistakenly made contact with C.T.'s genital area.

Any potential prejudicial impact from the testimony of the three witnesses did not outweigh the probative value due to the substantial similarity between the incidents. In addition, this [c]ourt repeatedly issued a cautionary instruction to the jury, explaining the limited purpose of the evidence. *See* N.T.

- 13 -

> 9/28/2017 at 153; N.T. 9/29/2017 at 53; N.T. 10/2/2017 at 86. Therefore, this [c]ourt did not abuse its discretion when it found [Appellant's] prior assaults admissible under the common plan or scheme and absence of mistake exceptions to Rule 404.

Trial Court Opinion, 3/8/19, at 5–7.

Upon review, we discern no abuse of the trial court's discretion in admitting the evidence of prior acts. Appellant's conduct toward the three Commonwealth witnesses bears significant similarities to his conduct toward C.T. In each case, Appellant provided a massage at his place of employment to a middle-aged client; Appellant touched the client's genitals without permission when he or she was in a physically vulnerable position; Appellant provoked a shocked reaction from the client; Appellant dismissed the incident as a misunderstanding; and the prior incidents occurred within six months of the incident at hand. *Accord Commonwealth v. Gordon*, 673 A.2d 866, 869 (affirming admission of common-scheme evidence that defendant indecently assaulted three other women, "each of whom was meeting with him on legal business at the time of the assault," within one year of instant offense).

Appellant dismantles the specific details of these similarities to argue the lack of "a unique *modus operandi*." Appellant's Brief at 24. However, these prior bad acts have a "close factual nexus sufficient to demonstrate the[ir] connective relevance" to the crime in question, *i.e.*, Appellant's conduct toward C.T. was the result of a common scheme or plan and not the result of a mistake or accident. *Tyson*, 119 A.3d at 359 (citation omitted). As for

"mistake", our review confirms that the Commonwealth raised this issue in its motion *in limine*, and Appellant responded. Motion to Admit Other Crimes Evidence, 5/5/17, at 4, 8; Motion in Limine to Preclude Other Acts Evidence, 7/13/17, at ¶ 15. Moreover, we agree with the Commonwealth that the evidence was relevant to prove the absence of mistake in order to establish aggravated indecent assault, *i.e.*, that Appellant was not merely negligent in touching C.T.'s genitals, and indecent assault, *i.e.*, that Appellant touched C.T.'s genitals for the purpose of sexual gratification. Commonwealth's Brief at 32.

Having determined that the prior bad acts were relevant, the trial court concluded, "Any potential prejudicial impact from the testimony of the three witnesses did not outweigh the probative value due to the substantial similarity between the incidents." Trial Court Opinion, 3/8/19, at 7. We agree. "[T]he substantial similarity between the [multiple] incidents gives the evidence of [Appellant's] previous [acts] considerable probative value. In light of the important similarities, the nature of [Appellant's] prior [acts] alone does not render [them] unduly prejudicial." **Tyson**, 119 A.3d at 361–362. Furthermore, to alleviate the potential for unfair prejudice, the trial court instructed the jury on the limited use of the evidence of Appellant's prior bad acts. N.T. Trial, 9/28/17, at 153; N.T. Trial, 10/2/17, at 86. **Accord Commonwealth v. Frank**, 577 A.2d 609 (Pa. Super. 1990) (holding admission of evidence of defendant's prior sexual assaults of children under

common plan exception was not unduly prejudicial where assaults possessed high degree of similarity and court issued cautionary instructions). Thus, Appellant second claim of error does not warrant relief.

Next, Appellant avers that the trial court erred in denying his request for a mistrial based on prosecutorial misconduct. Appellant's Brief at 34. Specifically, Appellant takes issue with the following portion of the prosecutor's closing argument:

> This is embarrassing stuff to talk about. You know how difficult it is to come into this courtroom, as [C.T.] did, as these three other victims did, and get in that chair and talk about as a schoolteacher or as a professional, anyone, that you were touched, that somebody violated you? You know how embarrassing that is? I ask you to consider how many people have not come forward in this case. Think about that. So I guess what you can actually take away from all of these victims that have come to court the last few days and talked is that the response that they've had of doubting themselves and being embarrassed, when none of them know each other, is an absolutely normal response.
>
> And the not guilty, I submit to you that that is a situation where the justice system failed in S.G.'s case. It happens all the time. Just because he was found not guilty does not mean that he did not do this, and frankly it shows that he just had another chance to re-offend, and on your verdict you can say that that manipulation is over and stop that from happening a fifth, a sixth, a seventh time, because one time is far too many.

Appellant's Brief at 35 (citing N.T. 10/2/2017 at 63–64).

- 16 -

The appropriate mechanism to challenge prosecutorial misconduct is through a motion for mistrial. Pa.R.Crim.P 605(B).[5] The following standards govern our review of an order denying a mistrial:

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, ... assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with the law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

**Commonwealth v. Jaynes**, 135 A.3d 606, 615 (Pa. Super. 2016) (quoting

**Commonwealth v. Lettau**, 955 A.2d 360, 363 (Pa. Super. 2008), *reversed*

*on other grounds*, 986 A.2d 114 (Pa. 2009) (citations, quotations, and

quotation marks omitted)).

---

[5] Pa.R.Crim.P. 605(B) provides: "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity."

"[W]ith specific reference to a claim of prosecutorial misconduct in a closing statement, . . . any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered." ***Jaynes***, 135 A.3d at 615 (citation omitted). Indeed:

> [o]ur review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom. Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation.

***Id.*** (internal quotation marks and citations omitted).

> The trial court disposed of this challenge with the following analysis:

> After hearing from both sides, this [c]ourt denied [Appellant's] request for a mistrial. Viewed in their context, as they must be, the prosecutor's statements were made in response to defense counsel repeatedly stating that [Appellant] was found not guilty in a prior case involving S.G.[4] *See id.* at 29, 30, 33, 40. The prosecutor did not suggest that the jury should infer that [Appellant] likely committed the crime at issue because of his prior acts. Rather, the comments served to rebut the suggestion by defense counsel that because [Appellant] was found not guilty in the case involving S.G., he could not have committed the act in this case. The prosecutor's statements did not prejudice the jury against [Appellant] such that they could not evaluate the evidence

- 18 -

J-S48026-19

fairly and objectively.  Therefore, this [c]ourt did not abuse its discretion in denying [Appellant's] motion for a mistrial.

> ⁴ Under CP-46-CR-0007632-2014, which took place in Montgomery County, a jury found [Appellant] not guilty of indecent assault (18 Pa.C.S. § 3126(a)(1)), the sole charge in the case.

Trial Court Opinion, 3/8/19, at 9 (brackets in original omitted).

Again, we discern no abuse of the trial court's discretion in denying Appellant's request for a mistrial.  The trial court properly examined the prosecutor's comments in the context of defense counsel's summation. *Jaynes*, 135 A.3d at 615.  Defense counsel argued the lack of evidence supporting a common plan or scheme.  To that end, defense counsel pointed to differences among the prior incidents and deficiencies in the Commonwealth's evidence; he calculated that Appellant had given 1,000 massages, but only two people had complained; and he reminded the jurors that another jury acquitted Appellant in the case involving S.G.  N.T. Trial, 10/2/17, at 27–40, 48.  In response, the prosecutor focused on similarities among the prior incidents to demonstrate a common plan, scheme, or design; she explained how embarrassing it would be for any person to disclose that they had been violated in such a personal way, which explains why only a few of Appellant's 1,000 clients complained; and she reminded the jury that an acquittal in S.G.'s assault case did not foreclose the possibility of Appellant committing an assault against C.T.  *Id.* at 61–65.

Based on the record before us, we conclude the prosecutor's comments were in fair response to defense counsel's arguments. Moreover, the trial court carefully instructed the jury on how to evaluate the arguments of counsel, how to consider and weigh the testimony presented at trial, and how to evaluate and weigh conflicting evidence. N.T. Trial, 9/27/17, at 130–131, 134; N.T. Trial, 9/28/17, at 173; N.T. Trial, 10/2/18, at 18, 80–83, 86–87. Thus, Appellant's third claim of error lacks merit.

Lastly, Appellant complains that the verdict was against the weight of the evidence. According to Appellant, C.T.'s testimony regarding the nature of the assault differed from statements she made earlier during the civil suit against Loews Hotel. Appellant's Brief at 39. Appellant contends that this discrepancy "so undermines confidence in the jury's verdicts that a new trial is required in the interest of justice." *Id.*

Our Supreme Court has set forth the following standards for addressing challenges to the weight of the evidence:

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. An appellate court may not overturn the trial court's decision unless the trial court palpably abused its discretion in ruling on the weight claim. Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is so contrary to the evidence as to shock one's sense of justice.

***Commonwealth v. Cash***, 137 A.3d 1262, 1270 (Pa. 2016) (internal citations and quotation marks omitted). "[W]e do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence.... Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion[.]" ***Commonwealth v. Ferguson***, 107 A.3d 206, 213 (Pa. Super. 2015) (citation omitted). We afford the gravest consideration to the findings and reasons advanced by the trial judge for its determination that the verdict was not against the weight of the evidence. ***Commonwealth v. Clay***, 64 A.3d 1049, 1056 (Pa. 2013). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Diggs***, 949 A.2d 873, 879–880 (Pa. 2008).

The trial court disposed of Appellant's weight claim as follows:

> On October 16, 2014, at approximately 9:00 p.m., C.T. gave a statement to Officer Darryl Goodin at the Loews Hotel. She told Officer Goodin that [Appellant] digitally assaulted her twice during the course of her massage. N.T. 9/27/2017 at 199, 203. Shortly thereafter, at around 9:30 p.m., C.T. arrived at Special Victims Unit. At 12:06 a.m., C.T. was interviewed by Detective Keenya Taylor and identified [Appellant] from a set of photographs. N.T. 9/28/2017 at 58–60; N.T. 9/29/2017 at 56. During cross-examination, defense counsel questioned C.T. about the fact that the civil suit complaint referred to [Appellant] placing his fingers inside of C.T.'s vagina and anus, whereas her subsequent testimony referred only to [Appellant] improperly touching her vagina. N.T. 9/28/2017 at 116–20. The jury weighed the evidence presented, evaluated the testimony of the witnesses, and found the complainant credible. The verdict was not against the weight of the evidence. Therefore, there was no abuse of discretion.

Trial Court Opinion, 3/8/19, at 10−11. We agree.

Although Appellant assails C.T.'s testimony and exalts his own character, he offers no evidence that the trial court exercised manifestly unreasonable judgment, misapplied the law, or acted out of partiality, prejudice, bias, or ill-will in denying his motion for a new trial. Moreover, the jury heard defense counsel cross-examine C.T. about, *inter alia*, inconsistencies between averments in her civil complaint and her testimony. N.T. Trial, 9/28/17, at 116−121, 131−134. Yet, the jury chose to give weight to C.T.'s testimony. Appellant essentially asks this Court to reassess the credibility of C.T. and to reweigh the evidence presented at trial, which we cannot do. **See Commonwealth v. Talbert**, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted) ("The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses."). Thus, our review of the record leads to the conclusion that the trial court did not abuse its discretion when it held that the verdict was not so contrary to the evidence as to shock the court's conscience. Appellant is not entitled to relief on his weight-of-the-evidence claim.

We find no merit to Appellant's claims of error. Thus, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/22/19</u>