J-A20015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                                :              PENNSYLVANIA
                                                  :

           v.                                :

DAQUAN HAMILTON                     :
                                                  :
           Appellant                  :       No. 233 EDA 2022

Appeal from the PCRA Order Entered December 20, 2021
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001391-2014

BEFORE:   BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:         **FILED OCTOBER 11, 2022**

Appellant, Daquan Hamilton, appeals from the post-conviction court's December 20, 2021 order denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. On appeal, Appellant contends that his trial counsel was ineffective and, thus, the court erred by denying his petition. After careful review, we affirm.

The facts of Appellant's underlying convictions were previously summarized by this Court, as follows:

> On the evening of December 26, 2013, Appellant and Khaleef Jones visited an apartment complex in Pottstown. Appellant told Jones that he wanted to get his stuff out of one of the apartments. Steven Burns was inside the apartment with George Hashimbey and Angel Luna. When Appellant knocked on the door, Burns opened the door but would not let Appellant inside. N.T., 6/17/15, at 8-10, 90-96.

---

[*] Retired Senior Judge assigned to the Superior Court.

Appellant and Jones left the apartment building, but they returned shortly after midnight on the morning of December 27, 201[3]. Before entering the building, Appellant handed Jones a .380 caliber gun and armed himself with a silver revolver. *Id.* at 93-94. Appellant and Jones returned to Burns' apartment, and Appellant told Jones to cover his face as they entered the elevator. They knocked on the apartment door, and Burns partially opened it. Appellant shoved his pistol into Burns' abdomen and forced his way inside. *Id.* at 10-11, 90-96. Burns and Appellant fought on the floor inside the door. Appellant yelled, "Shoot the nigger." As they struggled, Appellant fired his silver pistol, killing Hashimbey. *Id.* at 12-14, 98-99. Burns testified that he saw Appellant shoot Hashimbey. *Id.* at 14-15. Jones fired one shot into Burns' hip and ran down the stairs. Jones testified that he heard two shots after exiting the apartment. *Id.* at 99. Burns went into the hallway to ask a neighbor for help, and he remained there until police and paramedics arrived. *Id.* at 12-17, 98-99. The Commonwealth's ballistics expert testified that the bullet recovered from Hashimbey's body came from a .357 caliber gun, a different caliber from the gun Jones was carrying. N.T., 6/16/15, at 50.

Approximately ninety minutes after the shooting, Philadelphia Police [Detective] William Lynch stopped Appellant's car in a high crime neighborhood in North Philadelphia. When [Detective] Lynch ran the tags, he discovered a "try-and-locate" alert. Appellant, who was a passenger in the car, ran when he saw the police lights, but Jones stayed inside. Police arrested both men and recovered a .380 caliber gun from Jones' person during the arrest. N.T., 6/16/15, at 122-23. The police impounded the car and obtained a search warrant to search its passenger compartment. During the search, they recovered two cell phones and a fired .357 cartridge casing. N.T., 6/16/15, at 130-39. Subsequently, a Montgomery County detective obtained another search warrant to examine the contents of the cell phones.[2]

> [2] Appellant sought to suppress the contents of his cell phone in pre-trial motions, which the trial court denied.

\*\*\*

At the conclusion of trial, the Commonwealth introduced letters that Appellant sent Jones while both men were incarcerated following their arrest. The first letter suggested that both men claim that Burns let them enter the apartment immediately before

- 2 -

the shooting, and that Appellant "just came to get my clothes and see my cousin." N.T., 6/18/15, at 21. "Nobody was [supposed] to get hurt," Appellant continued, but Burns caused the shootings by starting a fight with Appellant. *Id.* In a second letter, Appellant stated that the Commonwealth was not offering him a plea bargain and was threatening to charge him with second-degree murder. *Id.* at 22-23. Appellant continued:

> I'm sorry for getting you in this shit. My lawyer said if I get on the stand, it would do more harm than good. Dam bro, I fucked up, but we can't cry over spilled milk … I need you to get on the stand and blame everything on [Burns]. Keep your head up. Fuck these crackers.

*Id.* at 23.

> During closing argument, defense counsel did not deny that Appellant was present in the apartment during the shootings. Instead, counsel contended that any actions that Appellant took were in self-defense. N.T., 6/18/15 at 74-93. The jury found Appellant guilty of second-degree murder, burglary[,] and other offenses.

*Commonwealth v. Hamilton*, No. 1477 EDA 2016, unpublished memorandum at 1-4 (Pa. Super. filed Sept. 18, 2018).

On February 9, 2016, Appellant was sentenced to an aggregate term of life imprisonment, without the possibility of parole. He filed a timely direct appeal, and after this Court affirmed his judgment of sentence, our Supreme Court denied his subsequent petition for permission to appeal. *See Commonwealth v. Hamilton*, 198 A.3d 460 (Pa. Super. 2018), *appeal denied*, 207 A.3d 906 (Pa. 2019).

Appellant thereafter filed the timely, *pro se* PCRA petition underlying the present appeal, raising numerous claims of ineffective assistance of trial counsel. PCRA counsel was appointed but filed a petition to withdraw. Ultimately, the PCRA court issued an order denying relief on all of Appellant's

claims except for two. It scheduled an evidentiary hearing to address those remaining issues and appointed new counsel to represent Appellant. Newly-appointed counsel filed an amended petition on Appellant's behalf raising several more claims, including a challenge to the legality of Appellant's burglary sentence. An evidentiary hearing was conducted on August 10, 2021. After the hearing, the court denied all of Appellant's issues except for his legality of sentencing challenge.[1]

Appellant filed a timely notice of appeal, and he complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court thereafter filed its Rule 1925(a) opinion. Herein, Appellant states three issues for our review:

> I. Was trial counsel ineffective for failing to object to the try-and-locate testimony of Detective Lynch because no evidence was presented to show that the Commonwealth had a reasonable suspicion to stop the vehicle?
>
> II. Was trial counsel ineffective for not requesting the court to charge on simple assault because simple assault was the crime that the court instructed the jury that … [A]ppellant intended to commit while instructing the jury on the charge of burglary?
>
> III. Was trial counsel ineffective for not objecting to the Assistant District Attorney's argument that the testimony of Khaleef Jones and Steven Burns was truthful?

Appellant's Brief at 3 (unnecessary capitalization omitted).

_____

[1] Specifically, "[t]he court found, and the Commonwealth agreed, that [Appellant's] burglary conviction should have merged with his second-degree murder conviction for sentencing purposes." Commonwealth's Brief at 6 n.2. Thus, the court vacated Appellant's sentence for burglary, which was a concurrent term of 6 to 12 years' incarceration.

"This Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he or she received ineffective assistance of counsel, our Supreme Court has directed that the following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [**Commonwealth v.**] **Colavita**, … 993 A.2d [874,] 886 [(Pa. 2010)] (citing **Strickland** [**v. Washington**, 466 U.S. 668 … (1984)]). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, … 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, … 66 A.3d 253, 260 ([Pa.] 2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **See Ali, supra.** Where matters of strategy and tactics are concerned, "a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course

actually pursued." *Colavita,* … 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Commonwealth v. King,* … 57 A.3d 607, 613 ([Pa.] 2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" *Ali,* … 10 A.3d at 291 (quoting *Commonwealth v. Collins,* … 957 A.2d 237, 244 ([Pa.] 2008) (citing *Strickland,* 466 U.S. at 694….)).

*Commonwealth v. Spotz*, 84 A.3d 294, 311-12 (Pa. 2014).

Appellant first argues that his trial counsel was ineffective for failing to object, at the suppression hearing, to Detective Lynch's testimony that he stopped the vehicle in which Appellant was a passenger after "he ran the tag of the vehicle, and the tag came back try-and-locate." Appellant's Brief at 10 (citing N.T. Hearing, 6/15/15, at 6). Specifically, the detective testified as follows:

[The Commonwealth:] Detective, did you run the tag of that vehicle?

[Detective Lynch:] Yes, I did.

[The Commonwealth:] What did you find out?

[Detective Lynch:] The tag came back as a try-and-locate.

[The Commonwealth:] And why, initially, were you following that vehicle?

[Detective Lynch:] Because the tag came back as a try-and-locate.

***

[The Commonwealth:] When you say try-and-locate, what do you mean?

[Detective Lynch:] Tag's [*sic*] get entered as try-and-locate when someone has permission to have a vehicle and basically they don't return it in a timely fashion and so they get entered as try-and-locate.

[The Commonwealth:] Does a police report get filed?

[Detective Lynch:] Yes, it does.

[The Commonwealth:] Does the person who had that vehicle file the police report?

[Detective Lynch:] The owner files the police report, correct.

[The Commonwealth:] And this tag came back as a try-and-locate?

[Detective Lynch:] Yes, it did.

[The Commonwealth:] Did you stop the vehicle?

[Detective Lynch:] Yes, I did.

N.T. Hearing, 6/15/15, at 6-7.

Appellant argues that his trial counsel should have objected and "moved to strike the testimony" of Detective Lynch "because there was no evidence whatsoever entered by the Commonwealth to show that there was reasonable suspicion for the try-and-locate to be entered into the police computer." Appellant's Brief at 10. Citing **Commonwealth v. Bondi**, 234 A.2d 191 (Pa. Super. 1967), Appellant argues that "where police officers stop a vehicle as a result of information received from another source[,] that source of information must be presented to the suppression court so that the court has enough facts to determine if it was a valid stop." **Id.** at 11. Because here, Detective Lynch "never produced the police report," or "testified that he ever saw said police report[,]" there was "no evidence that the try-and-locate was

authentic." **Id.** Appellant contends, therefore, that the detective's testimony was insufficient to establish he had reasonable suspicion to stop the vehicle in which Appellant was riding. Consequently, he insists that his trial counsel was ineffective for not objecting to, and moving to strike, Detective Lynch's testimony.

Initially, we observe that this Court already decided that "Detective Lynch … reasonably suspected that the driver was operating the car without authorization." **Hamilton**, No. 1477 EDA 2016, unpublished memorandum at 10. We explained: "The detective ran the tags because the car was in a known high-crime area in North Philadelphia, and he learned that a 'try-and-locate' notice was on the registration, which meant that the car might have been a rental that was not returned on time. N.T., 6/15/15, at 9, 11-12. These factors gave the detective reasonable suspicion to stop the car for further investigation." **Id.**

Arguably, however, we did not address Appellant's specific claim that his counsel should have objected to Detective Lynch's testimony on the basis that proof of the police report underlying the 'try-and-locate' notice was required. In this regard, we agree with the Commonwealth and the PCRA court that Appellant's reliance on **Bondi** is misplaced. **See** Commonwealth's Brief at 15; PCRA Court Opinion (PCO), 3/4/22, at 5. As the PCRA court explained:

> **Bondi** involved an arrest warrant utilizing the standard of probable cause, with an unidentified informant as the source of the information supporting the warrant. The present matter

- 8 -

> involved a vehicle stop utilizing a reasonable suspicion standard, with a known source of the computer database information.
>
> To explain, a stop is subject to review under the reasonable suspicion standard -- a lesser standard than probable cause at issue in **Bondi**. Reasonable suspicion to justify a car stop is viewed from the standpoint of an "objectively reasonable police officer." **Commonwealth v. Chase**, 960 A.2d 108[, 120] (Pa. 2008). Clearly, Detective Lynch had objectively reasonable suspicion to stop a vehicle whose license plate matched one of the missing try-and-locate vehicles in the police database. The database report provided the reasonable suspicion to make the stop. No further corroborating evidence was necessary. Moreover, the source of the try-and[-]locate at issue was the owner of the vehicle, who filed a police report indicating that the vehicle had not been returned. Thus, the source was reliable.

PCO at 6.

We agree with the court's analysis. **Bondi** involved probable cause and an unidentified informant, while this case involves reasonable suspicion and information from the police department's computer database. Thus, **Bondi** is inapplicable, and we agree with the court that Detective Lynch had reasonable suspicion to stop Appellant's vehicle based on the try-and-locate notification. Therefore, Appellant's underlying claim of ineffectiveness lacks arguable merit.

In any event, even if the stop of Appellant's vehicle was illegal, we would agree with PCRA court that he has failed to demonstrate that he was prejudiced by the admission of the evidence recovered during the stop. The court reasoned:

> Appellant claims that "[t]rial counsel's failure to object prejudiced [him], because, if properly objected to, the stop should have been declared illegal, and all of the evidence resulting therefrom[, *i.e.,* a] cell phone and [a] .357 fired cartridge casing[,] would have

been suppressed." However, even if the cell phone and cartridge casing had been suppressed, there was still ample trial evidence to support Appellant's conviction via testimony from co-defendant, Khaleef Jones; testimony from witness Steven Burns; the King Street Commons surveillance video; and, … Appellant's own letter to co-[d]efendant Jones telling Jones to testify and blame everything on Burns…. None of this evidence resulted from the car stop at issue.

*Id.* (brackets added by the PCRA court and citations to the record omitted).

Appellant does not offer any response to the court's conclusion that the testimony of Jones and Burns, the surveillance video, and his inculpatory letter to Jones was sufficient to support the verdict, even without the evidence obtained as a result of the vehicle stop. Accordingly, we would conclude that he has not established that he was prejudiced by counsel's failure to object to Detective Lynch's testimony, even if doing so would have led to the suppression of the at-issue evidence.

In Appellant's next issue, he avers that his trial counsel acted ineffectively by not requesting a jury instruction on simple assault. Appellant was not charged with simple assault. However, the court instructed the jury that, to convict Appellant of burglary, it must find "that [Appellant] entered the apartment indicated in the trial[,] … [and] that [he] entered that location with the intent to commit a crime therein, in this case, simple assault." Appellant's Brief at 12-13 (quoting N.T., 6/18/15, at 175-76). According to Appellant, because "the court instructed the jury that simple assault was the intended crime of the burglary[,] … the elements of simple assault had to be

- 10 -

conveyed to the jury so that they could properly understand the charge." *Id.* at 13.

Again, we conclude that Appellant's claim lacks arguable merit. As the PCRA court aptly explained:

> Pursuant to the Pennsylvania Crimes Code, "a person commits the offense of burglary if, with the intent to commit *a crime* therein, the person … enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present." 18 Pa.C.S. [§ 3502](1)(1)(ii) (emphasis added). Thus, the statute does not require the Commonwealth to allege or prove the particular crime that the defendant intended to commit after his forcible entry in the private residence in order to secure a conviction for burglary. ***Commonwealth v. Alston***, 651 A.2d 1092 ([Pa.] 1994); ***Commonwealth v. Von Aczel***, 441 A.2d 750 (Pa. Super. 1981); and[] ***Commonwealth v. Brown***, 886 A.2d 256 (Pa. Super. 2005). Further, if a defendant is not on trial for a crime supposedly underlying a burglary charge, he is not entitled to a jury instruction on that charge. ***Commonwealth v. Harrison***, 663 A.2d 238 (Pa. Super. 1995). It is only if the Commonwealth specifies the object crime in the Bill of Information that it must prove that the defendant intended to commit that specific offense upon entry. ***Commonwealth v. Brown***, 886 A.2d 256 (Pa. Super. 2005).
>
> Here, the Commonwealth did not specify the underlying crime for burglary in the Bill of information charging … Appellant. The Commonwealth charged … Appellant with burglary as follows:
>
>> COUNT 6: Burglary- Overnight Accommodation, Person Present 183502A1— Felony 1st Degree[:]
>>
>> Did unlawfully enter a building or occupies structure, to wit: 262 KING STREET, APARTMENT 524, POTTSTOWN, PA 19404 or separately secured or occupies portion thereof, being the property of: GEORGE HASHIMBEY AND/OR STEVEN BURNS at a time when the premises were not open to the public, without license or privilege, with the intent *to commit a crime therein*, and any person present.
>
> (Bill of Information, Para. 2, emphasis added)[.]

- 11 -

Accordingly, … Appellant was never charged with simple assault, and consequently, was not entitled to a jury instruction on simple assault.

Additionally, the trial court instructed the jury in accordance with the Suggested Criminal Standard Jury Instruction Section 15.3502 which indicates that the trial court need not identify, much less define, the crime that the defendant intended to commit upon entering the specified location.

PCO at 7-8 (some brackets omitted).

Having reviewed the cases cited by the PCRA court, we agree that it was not required to instruct the jury on the elements of simple assault, as Appellant's indictment did not charge him with that crime as the predicate offense to his burglary charge. Moreover, we also agree with the court that Appellant failed to prove that he was prejudiced "from the absence of a jury instruction on simple assault, as … Appellant was convicted of aggravated assault. Thus, surely if … Appellant had been charged with the lesser included offense of simple assault, and the court had instructed the jury on same, the Commonwealth would also have met its burden for a conviction on the lesser offense of simple assault." *Id.* at 9. Consequently, no relief is due on Appellant's claim that his counsel acted ineffectively by not objecting to the omission of an instruction on simple assault.

Finally, Appellant maintains that his counsel was ineffective for not specifically objecting when, during closing arguments, the prosecutor impermissibly vouched for the credibility of Khaleef Jones. Specifically, Appellant points to the following portion of the prosecutor's closing argument:

Members of the jury, Khaleef Jones was telling the truth. I submit credibility. Was he squirming? Did he not make eye contact with

you? Did he avoid any of the defense's questions? Steven Burns and Khaleef answered every question, even the uncomfortable ones about their history. I submit, do you think [it] was easy for Steven -- for Khaleef Jones to sit up here and testify against his former friend, [in a] packed courtroom? He took responsibility.

Want to know who's responsible? The only one I submit who took responsibility was Khaleef Jones. He looked exhausted. What did he say? He sat here. I believe the testimony was he said, I'm tired of lying. I don't want to lie anymore. I have a five-year-old. I[] [have been] tried. Sentencing is up to the Judge. I don't want to lie anymore. I want to take responsibility for my actions. Do you think [that] was easy for him to do?

He pled to third[-]degree murder and numerous other felonies. I submit he's the only one who accepted responsibility. He sat there and stood up like a man and finally told you what happened. [He m]ay not have been telling the truth last month. He told the truth yesterday. All the evidence points to that. He did tell the truth yesterday, and that's the only time he has to tell the truth was yesterday.

[Defense Counsel]: Objection.

N.T., 6/18/15, at 121-22. The court did not rule on defense counsel's objection, and the Commonwealth continued its closing argument. *Id.* at 122.

In rejecting Appellant's claim that counsel should have lodged a specific objection to the prosecutor's remarks, or pressed the court for a ruling on the objection he did make, the PCRA court reasoned that the prosecutor's argument was "fair response to defense counsel's attack on the credibility of witnesses Jones and Burns." PCO at 10. It explained:

[T]hroughout his closing argument, defense counsel repeatedly painted Commonwealth witness, Khaleef Jones[,] as a liar. Witness Steven Burns' veracity was also placed into question. ([] ***See***, [N.T. Trial at] 75-92)[.] Therefore, in fair response to same, the prosecutor pointed to corroborating evidence as to Jones and Burns' testimony throughout his closing. ([***Id.*** at] … 94-141…). And, towards the end of his closing, the prosecutor argued, "I submit, maybe [Jones and Burns] lied six months ago. … [T]hey

might lie tomorrow. Yesterday, they were telling the truth. They sat there yesterday and told you the truth. If yesterday, and only yesterday[;] but the physical evidence matches up." (*Id.* at … 110)[.] As the transcript makes clear, the prosecutor did not give his opinion regarding the credibility of Jones and Burns. Rather, throughout his closing, the prosecutor directed the jury to all of the evidence supporting the witnesses' testimony, and then concluded by stating that such evidence demonstrated that Jones and Burns gave truthful testimony.

*Id.* at 10-11.

Notably, on direct appeal, Appellant raised a challenge to the prosecutor's remarks as improperly commenting on a witness's credibility. We initially concluded that this claim was waived because defense counsel did not lodge a specific objection. However, we alternatively concluded that Appellant's claim that the prosecutor acted improperly by commenting on Jones's credibility was "devoid of merit." *Hamilton*, 1477 EDA 2016, unpublished memorandum at 24. We explained:

"[T]he prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom." *Commonwealth v. Jaynes*, 135 A.3d 606, 615 (Pa. Super. 2016). The prosecutor herein argued that the witnesses told the truth on the stand because they were under oath, despite their earlier lies. These facts—the witnesses had given prior inconsistent statements and were under oath when they testified—were in the record. N.T., 6/17/15, at 78-80. Therefore, the prosecutor advanced arguments that found support in the record, and he did not improperly vouch for any witness's credibility.

*Id.*

Appellant argues, and we agree, that our alternative analysis in this regard was *dicta*. Nevertheless, our reasoning is persuasive. Additionally,

- 14 -

Appellant offers no response to the PCRA court's conclusion that the prosecutor's remarks were fair response to the defense's closing argument. Accordingly, he has not met his burden of demonstrating arguable merit in his claim that his counsel acted ineffectively by not lodging a more specific objection to, or pressing the court for a ruling on, the prosecutor's ostensibly improper remarks.

Moreover, we also agree with the PCRA court that Appellant's trial counsel expressed a reasonable basis for objecting as he did, and for not pursuing a ruling on his objection. At the PCRA hearing, counsel confirmed that one of the "central themes" of his closing argument was that Jones "was a liar" and that he attempted to "paint[] him as a liar" by "repeatedly point[ing] out all the lies and inconsistencies in his testimony[.]" N.T. PCRA Hearing, 8/10/21, at 28. Accordingly, counsel believed that the prosecutor's closing argument was a fair response to his closing, but he objected to the at-issue remarks by the prosecutor simply to get "him to stop" because "the mood in the courtroom [was] fairly intense at [that] time…." *Id.* at 30. Counsel chose not to press the court for a ruling on his objection because he did not want the court to state that the prosecutor's remarks were fair response and "make the issue highlighted even more." *Id.*

Given this testimony by trial counsel, the PCRA court concluded that counsel "provided … a reasonable basis for declining to follow up on his objection concerning vouching. Counsel articulated that both the objection and the lack of follow through were strategic decisions." PCO at 13. We

- 15 -

agree. Thus, Appellant's third and final ineffectiveness claim does not warrant relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/11/2022