J-S02020-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
              :             PENNSYLVANIA
              :
         v.            :
              :
              :
HAREECE MOFFITT         :
              :
      Appellant     :   No. 2860 EDA 2023

Appeal from the Judgment of Sentence Entered September 21, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006129-2021

BEFORE: LAZARUS, P.J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY DUBOW, J.:          **FILED JULY 10, 2025**

Appellant, Hareece Moffitt, appeals from the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County after a jury found him guilty of First-Degree Murder and related offenses. He challenges certain evidentiary rulings, jury instructions, and the sufficiency of the evidence. He also raises a claim of prosecutorial misconduct. After careful review, we affirm.

The trial court accurately summarized the factual history of this case as follows:

> On June 22, 2019, at approximately 4:00 a.m., the decedent, Benjamin White, was walking down Market Street with a seventeen-year-old young woman, M.B. and another man, Christian Snowden. The decedent and Snowden were both intoxicated and Snowden was having difficulty walking straight. As they walked past a clothing store located at 5529 Market Street in Philadelphia known as New Grind Clothing, which was owned by [Lasana Jaiteh, Appellant's co-defendant,] Snowden lost his

balance and fell into the store's front window, which shattered upon impact. After he fell into the window and the lights of the store came on, Snowden began to run east down Market Street in the direction of 55th Street. After Snowden began to run, the decedent ran in the same direction of Snowden while M.B. hid behind a pillar in the middle of the street about twenty feet from the store.[]

[Mr. Jaiteh] and [Appellant] were inside of New Grind Clothing with a couple other men when Snowden fell into the window. After hearing the window break, several men, including [Appellant and Mr. Jaiteh] armed with handguns, ran outside through the front door and chased the decedent outside of the store. At that time, M.B. repeatedly screamed that the window had been broken by accident. As the decedent ran away, [Mr. Jaiteh] aimed his gun at him and fired at least one shot. After [Mr. Jaiteh] began shooting, [Appellant] aimed his gun in the direction of the decedent and began firing multiple shots. The decedent was struck once in the back and collapsed in the street about fifty feet from the store.

After the shooting, the co-defendants and the other men went back inside of New Grind Clothing and took the digital video recorder ("DVR"), which apparently had security footage from cameras located outside the front door and inside the store. After a few minutes, M.B., who remained on the scene to provide aid to the decedent, saw Mr. Jaiteh, Appellant, and the other men leave the store carrying the DVR, get into a van parked out front, and drive away.

Calvin Houston, a neighbor who lived across the street from New Grind Clothing, was on his front porch at the time of the shooting. Houston later identified Mr. Jaiteh and [Appellant] as the shooters in photo arrays shown to him by police and at [Appellant's] preliminary hearing.

When police arrived at the scene, New Grind Clothing was unoccupied and had its front grate pulled down. Police noticed that there was a camera at the front door of the store and a second camera inside of the store. After searching the store, it appeared that a DVR from inside of the store that was connected to the cameras had been removed.

On the sidewalk in front of New Grind Clothing, police recovered two fired cartridge casings ("FAA's"), a .380 caliber and a .40 caliber. Police also recovered a .40 caliber FCC, seven live .380 rounds, a Smith & Wesson 9mm gun box, live 9mm ammunition, and two 9mm handgun magazines from within the store.

On June 27, 2019, police showed M.B. a photo array that included a photo of [Mr. Jaiteh]. At that time, she indicated that [Mr. Jaiteh] looked familiar, like one of the guys that was shooting. . . .

The decedent died from a single indeterminate range gunshot wound to the left midback. A copper-colored jacketed metal projectile was recovered from the decedent's body.

Tr. Ct. Op., 1/18/24, at 2-4.

After the incident, Officer Martin Mitchell, who had driven Mr. Houston to the police station for further questioning, spoke with his colleague Detective Bradley. Shortly thereafter, Detective Bradley memorialized the interview he conducted with Officer Mitchell ("Interview Report"). The Interview Report included Officer Mitchell telling Detective Bradley that in the police car, Mr. Houston had told him that he was "just off work and was inside his house when he heard the gunshots, then he ran out [of] the house with no shirt or shoes to help the victim." Appellant's Br., Exh. A. Notably, Officer Mitchell did not sign or swear to the Interview Report.

The Commonwealth arrested Mr. Jaiteh on June 26, 2020, and Appellant on October 15, 2020, and charged them each with First-Degree Murder, Conspiracy, and related offenses.

The Municipal Court proceeded with a joint preliminary hearing on July 7, 2021, at which Calvin Houston testified . In particular, Mr. Houston testified

that at the time of the incident, he was on the front porch of his residence facing New Grind Clothing, having just returned home from the night shift. He stated that he was looking at his cell phone and smoking a cigarette when he heard glass break and looked up. He saw the decedent running away from the store and, shortly thereafter, saw Mr. Jaiteh run out of the store and fire a gun at the decedent as M.B. shouted that it was an accident. Mr. Houston identified Appellant in court as one of the shooters and stated that Appellant came out of the store immediately after Mr. Jaiteh and was wearing a gray hoody. Mr. Houston saw "gunfire sparks coming from [Appellant's] hoody." N.T., 8/2/23, at 20.

After Mr. Houston testified on direct, defense counsel each cross-examined Mr. Houston. Mr. Jaiteh's counsel questioned Mr. Houston about, *inter alia*, his location at the time of the shooting, his position and ability to see the shooting, and his identification of the co-defendants. Appellant's counsel challenged Mr. Houston's identification of Appellant as a shooter and questioned him about the statements he gave to police immediately after the shooting and while looking at a photo array some days later.

Mr. Houston died following the preliminary hearing.

Appellant and Mr. Jaiteh proceeded to a joint trial. On July 31, 2023, the first day of trial, the Commonwealth filed a motion *in limine* to admit Mr. Houston's preliminary hearing testimony. Defense counsel opposed the motion, asserting, *inter alia*, that even though they had cross-examined Mr.

Houston at the preliminary hearing, they did not have full discovery prior to the preliminary hearing. N.T., 7/31/23, at 13-14. In addition, Appellant's counsel argued that he did not have "several statements that [Mr. Houston] gave. I think he gave at least two statements, and a 911 call. He also did not identify [Appellant] until later, and then in the courtroom. So he was never thoroughly crossed on identification." *Id.* at 14. The Commonwealth responded that it had provided all discovery necessary for the preliminary hearing. The court granted the motion and allowed the Commonwealth to present Mr. Houston's testimony at trial.

The next morning, the Commonwealth began presenting witnesses. In addition to testimony from police investigators, M.B. testified that Appellant had made "real good eye contact" with her when he ran out of the store the morning of the shooting, and that she had recognized him in the courthouse corridor prior to trial. N.T., 8/1/23, at 216-17, 252-253. M.B. also testified that she had run behind a pillar when the shooting started and repeatedly screamed, "It was an accident." *Id*. at 197.

The jury found Appellant and Mr. Jaiteh each guilty of First-Degree Murder, Recklessly Endangering Another Person ("REAP"), and Possession of

an Instrument of Crime ("PIC").[1, 2]  Appellant waived a presentence investigation and mental health evaluation, and the court scheduled sentencing for a later date.

Appellant filed a motion for judgment notwithstanding the verdict prior to the sentencing date.  On September 21, 2023, the court held a hearing and Appellant's counsel argued, *inter alia*, that although Appellant possessed and fired a gun during the incident, the Commonwealth failed to prove Appellant had acted with the specific intent to kill.  The court denied the motion.  The court then proceeded to sentencing where it imposed a mandatory minimum sentence of life imprisonment without the possibility of parole for the First-Degree Murder conviction.  It imposed no further penalty for the REAP and PIC convictions.

Appellant filed a post-sentence motion raising only a challenge to the weight of the evidence. The trial court denied the motion and Appellant filed

---

[1]  18 Pa.C.S. §§ 2502(a), 2705, 907(a), respectively.

[2] The jury found both men not guilty of Conspiracy, Obstructing Administration of Law or Other Governmental Function, and Tampering with or Fabricating Physical Evidence.  This Court affirmed Mr. Jaiteh's judgment of sentence on May 6, 2025. **Commonwealth v. Jaiteh**, 2025 WL 1304891 (Pa. Super. filed May 6, 2025)(*non-precedential*).

a Notice of Appeal. Both Appellant and the court complied with Pa.R.A.P. 1925.[3]

* * *

In his Statement of Questions Involved, Appellant raises the following issues for our review:

1. Did the trial court abuse its discretion and cause irreparable harm to Appellant by allowing the preliminary hearing testimony of Calvin Houston to be read into the record before the jury because defense counsel, *inter alia*, did not have a full and fair opportunity to cross-examine Mr. Houston at the preliminary hearing, counsel was not provided with full discovery prior to the preliminary hearing, Mr. Houston could not have seen Appellant because it was dark and approximately 185 feet from where Mr. Houston was located inside his home and where the shooting occurred and the Commonwealth allowed the introduction of false and uncorrected testimony at trial, and prior counsel was only provided with partial discovery on the day of the preliminary hearing meaning that there was inadequate time to prepare full cross-examination?

2. Did the trial court abuse its discretion and cause irreparable harm to Appellant by reading to the jury an incomplete and inadequate cautionary instruction when the trial prosecutor engaged in prosecutorial misconduct by engaging in an *ad hominin* attack on defense counsel stating that it was defense counsels' job to get clients off murder for which Appellant was guilty, thereby shifting the burden to Appellant?

_____

[3] After Appellant filed his initial notice of appeal, his counsel filed a motion to withdraw his representation which this Court denied without prejudice to seek relief from the trial court. The trial court then appointed Stephen T. O'Hanlon, Esq., as appellate counsel, but not before this Court dismissed the appeal for failure to file a brief. On Appellant's motion, we subsequently reinstated the appeal and entered a briefing schedule. Appellant then filed a motion for remand to file an amended Rule 1925(b) statement. We granted the motion and vacated the briefing schedule. Appellant filed a new Rule 1925(b) Statement on June 10, 2024, and the trial court filed a supplemental Rule 1925(a) Opinion. Appellant filed his appellate brief on August 6, 2024.

3. Did the Commonwealth engage in misconduct which harmed Appellant by arguing that snitches get stitches and bullets when there was no evidence of any intimidation and when the only inference was that Appellant was implicated in the death of Calvin Houston?

4. Did the trial court abuse its discretion and cause irreparable harm to Appellant by allowing the Commonwealth to engage in impermissible bolstering and presenting hearsay testimony with an inadequate and confusing cautionary instruction when Detective John Harkins was permitted to testify that [M.B.] and Calvin Houston identified Appellant from photo arrays and when there was no evidence that either witness had not been forthright and had recanted?

5. Was there insufficient evidence to convict for [F]irst-[D]egree Murder because witnesses [M.B.] and Calvin Houston were approximately 185 feet away and, assuming arguendo that Appellant shot or was engaged an accomplice [sic], there was justified self-defense or mistaken self-defense because any reasonable person would believe that decedent, Benjamin White, was attempting to break into the premises where Appellant was allegedly located?

Appellant's Br. at 4-5 (reordered for ease of disposition; some capitalization omitted).

**A**.

Appellant first asserts that the trial court abused its discretion in admitting Mr. Houston's preliminary hearing testimony at trial because he did not have a full and fair opportunity to confront him. *Id*. at 11-19. Specifically, he contends that because the Interview Report containing Officer Mitchell's hearsay statement was not provided to defense counsel prior to the preliminary hearing, "Houston was never confronted with his diametrically

opposed and inconsistent version of the facts" and "therefore, his veracity was never fully tested." *Id.* at 15-16. Appellant avers that because "[t]here was neither a full and fair opportunity to question him at the preliminary hearing or trial" about "vital impeachment evidence," the court and the Commonwealth violated his Sixth Amendment right to confrontation. *Id*. at 17-18.

Appellant also argues that during the hearing on the motion *in limine*, the Commonwealth "presented false evidence[.]" *Id.* at 11. Appellant references the Interview Report and argues that the Commonwealth knew while arguing its motion *in limine* that Mr. Houston's testimony lacked indicia of reliability. *Id*. He further argues that the Commonwealth's "failure to disclose this enormous discrepancy in the Houston testimony on two occasions, constituted misrepresentations both to the lower court and to the jury, which was significant because only Houston implicated Appellant in the shooting. Thus, there were two due process violations under *Napue v. Illinois*, 360 U.S. 264 (1959)[,] and its progeny[.]" *Id*. at 11-12.[4] He further contends that "the Commonwealth allowed the record to be purposefully misrepresented at trial, which were violations under *Napue*." *Id*. at 18.

_____

[4] Although Appellant attempts to rely on the Interview Report as containing Mr. Houston's "testimony," that report does not contain testimony from anyone. It contains only an unsworn double hearsay statement that Officer Mitchell provided to Detective Bradley about statements that Mr. Houston made to Officer Mitchell.

Based on our review of the record, we conclude Appellant failed to preserve these arguments for appellate review.

"Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). This principle applies to issues raising constitutional challenges based on the Confrontation Clause. *See*, *e.g.*, *Commonwealth v. Stays*, 70 A.3d 1256, 1264 (Pa. Super. 2013) (finding waiver of Confrontation Clause issue because it was not raised until after the appellant had filed his notice of appeal and raised it for the first time in his Pa.R.A.P. 1925(b) Statement).

Here, Appellant did not raise this issue until he filed his Pa.R.A.P. 1925(b) Statement following this Court's remand. Accordingly, this issue is waived.[5, 6]

_____

[5] In addition, even if Appellant had raised this issue before the trial court in his post-trial or post-sentence motions, we would conclude he failed to preserve it with a specific objection that because of Officer Mitchell's statement memorialized by Detective Bradley, he was unable to conduct a "full and fair" cross-examination of Mr. Houston. *See* N.T., 7/31/23, at 13-14 (seconding Mr. Jaiteh's counsel's general objection and arguing generally that "we did not have any discovery" and Mr. Houston "was never thoroughly crossed on identification."). *See* Pa.R.E. 103(a)(1) (requiring specificity when objecting to the admission of evidence).

We highlight that at trial, neither counsel called Officer Mitchell as a witness to testify regarding Mr. Houston's statements to him or attempted to introduce the Interview Report into evidence even though counsel had a copy of the Interview Report and the Commonwealth had listed Officer Mitchell as a witness.

[6] Moreover, Appellant's argument that the Commonwealth committed a *Napue* violation is without merit. In *Napue*, the U.S. Supreme Court
*(Footnote Continued Next Page)*

- 10 -

**B**.

In his next two issues, Appellant argues that "the trial court abused its discretion and caused irreparable harm to Appellant by reading to the jury an incomplete and inadequate cautionary instruction" after the "trial prosecutor engaged in prosecutorial misconduct by engaging in an *ad hominem* attack on defense counsel" that "shifted the burden" to Appellant "by implying that Appellant was guilty and he had a lawyer to get him off." Appellant's Br. at 20 (citing N.T., 8/2/23 at 282-287, 290-92, and N.T., 8/3/23, at 3-4). He also avers that the prosecutor engaged in misconduct when he "made overt references to Appellant and his codefendant being involved in Calvin Houston not being present at trial" which the trial court failed to provide an adequate jury instruction. Appellant's Br. at 26. Neither argument warrants relief.

We review a claim of prosecutorial misconduct under the following legal precepts:

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In

---

reiterated that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." **Napue**, 360 U.S. at 269 (internal citations omitted). In order to find a **Napue** violation, a court must conclude (1) the witness committed perjury; (2) the prosecution knew or should have known of their perjury; (3) the false testimony went uncorrected; and (4) there is a reasonable likelihood that the false testimony affected the verdict. **See id**. at 269-271. Here, there is no evidence that Mr. Houston committed perjury or that the Commonwealth presented "false evidence" at the hearing on the motion *in limine* or at trial. Accordingly, even if preserved, this argument would fail to garner relief.

considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

*Commonwealth v. Toritto*, 67 A.3d 29, 37 (Pa. Super. 2013) (citation omitted); *see also Commonwealth v. Robinson*, 877 A.2d 433, 441 (Pa. 2005) (holding that prosecutorial misconduct does not occur unless the jurors form "a fixed bias and hostility toward the defendant" based on the prosecutor's comments).

This Court has "recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial." *Commonwealth v. Jaynes*, 135 A.3d 606, 615 (Pa. Super. 2016). Further, an immediate correction by the trial court following a ruling sustaining an objection to a statement made during closing argument may "neutralize[ ]" any possible prejudicial effect of the challenged comment. *Commonwealth v. Martinolich*, 318 A.2d 680, 687-88 (Pa. 1974).

Finally, "it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered." *Jaynes*, 135 A.3d at 615.

The following excerpt from the notes of testimony provides the necessary context for our review:

> **Prosecutor**: . . . It gets a little heavier when you have to deal with the witnesses who, as you might imagine, are not anxious

and banging down the door to come into court and to testify in a criminal case, in general, and, certainly, not a homicide because the stakes are high in a homicide. And when you come into a court of law and point fingers at people, well, what is the expression? Snitches can get stitches.

**Mr. Jaiteh's Counsel**: Objection.

**Prosecutor**: And they can also get bullets.

**Court**: Did I hear an objection?

**Mr. Jaiteh's Counsel**: You did.

**Court**: Okay. That's sustained. There's no evidence of anything like that in this case.

**Prosecutor**: And so you overcome the hesitancy of witnesses to come forward. And then, they get called into court, and they get stripped of their humanity; just like I promised you.

-- and by the way, he said I was going to take a run at him. I'm not going to take a run at him. I'm not. It's not personal. It's not. I will take issue with what he said. I will even take issue with some of the things; how he said it. But he's got a job to do. His job is to get his client off. That's his job.

**Mr. Jaiteh's Counsel**: Objection.

**Court**: Sustained.

N.T., 8/2/23, at 249-51.

We first note that Appellant's counsel did not join in the objections raised by Mr. Jaiteh's counsel and he, thus, arguably failed to preserve his challenge. Moreover, in Appellant's argument, he cites only one case for the proposition that "[a]dequate curative instructions may be able to cure error or harm to criminal defendants." *Id.* at 19 (citing *Commonwealth v. Maloney*, 365 A.2d 1237, 1241 (Pa. 1976)). Nonetheless, we address Appellant's arguments with reference to the *Jaiteh* Court's review and analysis addressing similar

- 13 -

challenges raised by Appellant's co-defendant in his appeal. The ***Jaiteh*** Court

concluded that the issue warranted no relief, stating:

> In addressing the claim [Jaiteh] raised in this appeal, the trial court found that its instruction to the jury, provided immediately after it sustained [Jaiteh's] objection, adequately informed the jury that this case did not involve any evidence of witness retaliation. After reciting relevant law, the trial court concluded:
>
>> The prosecutor's statement regarding witnesses' reluctance to come forward and testify for fear of retaliation did not amount to reversible error. These comments did not allege or imply that the Defendants were in anyway involved in or responsible for Calvin Houston's death and subsequent availability as a witness. **The prosecutor's statement was simply a general statement about witnesses who do testify and an attempt to bolster the credibility of the civilian witnesses who testified at the Defendants' trial.** The prosecutor's comments did not form in the jurors' minds a fixed bias and hostility toward the Defendants that would cause them not to weigh the evidence objectively and render a fair verdict. Regardless, after the prosecutor's comment, this [c]ourt immediately sustained defense counsel's objection and provided the jury with an instruction making it clear that there wasn't anything like that in this case.
>
> [Jaiteh] Tr. Ct. Op., [1/18/24,] at 13, *citing* N.T., 8/2/23, at 249-50.
>
> * * * *
>
> The trial court also found meritless [Jaiteh's] contention that the prosecutor's second challenged comment shifted the Commonwealth's "unwavering burden to [Jaiteh] at the same time denigrating defense counsel." [*Jaiteh's*] Br. at 33. The court concluded it properly informed the jury that a defendant is not required to prove his own innocence, stating:

> After the prosecutor stated that it is defense counsel's job to get his client off, this [c]ourt sustained defense counsel's objection and granted his request for a curative instruction. This [c]ourt informed the jury, in no uncertain terms, that the prosecutor's statement was stricken from the record, the jury was to disregard any comment about defense counsel's job, and clarified that a defense attorney has an ethical duty to zealously represent their client. This [c]ourt made clear to the jury that a defendant is innocent until proven guilty, a defendant is not required to prove his own innocence, and that the burden is on the Commonwealth to prove that a defendant is guilty of each of the crimes charged beyond a reasonable doubt. *See* N.T., 8/2/23, at 282; 8/3/23 at 3-5, 11-14.
>
> None of the prosecutor's comments during closing argument were so prejudicial that they caused the jury to form a bias or hostility.

*Jaiteh*, 2025 WL 1304891, at *9 (quoting *Jaiteh* Tr. Ct. Op. at 14).

Based on our review of the record, we conclude that the prosecutor's comments did not cause the jury to form a fixed bias and hostility toward Appellant. Moreover, the court gave a proper curative instruction while charging the jury, an instruction to which counsel did not object. Accordingly, these issues warrant no relief.

## C.

Appellant next asserts that the court erred in allowing Detective Harkins to testify regarding M.B.'s and Mr. Houston's identification of Mr. Jaiteh made during their review of photo arrays. He argues that Detective Harkins' testimony impermissibly bolstered M.B.'s and Mr. Houston's credibility, and that the court gave an inadequate and confusing cautionary instruction regarding Detective Harkins' testimony. Appellant's Br. at 22 (citing N.T.,

8/2/23, at 75-79, 161-168). Significant to this appeal, Appellant's counsel agreed with the court that those photo arrays "ha[d] nothing to do with [Appellant.]" N.T., 8/2/23, at 78. Appellant's argument is essentially that Detective Harkins' testimony about the photo arrays shown to M.B. and Mr. Houston bolstered M.B.'s credibility when she made her in-court identification of Appellant.

Our review of the record reflects that Detective Harkins first testified about the investigation and procedures that the police investigators followed generally when there are eyewitnesses. N.T., 8/2/23, at 72-74. After Detective Harkins noted that Detective George Fetters had shown the photographic array to M.B., Mr. Jaiteh's counsel objected and requested a sidebar. *Id.* at 74. The sidebar occurred off the record. As noted above, Appellant's counsel agreed with the court that those photo arrays "ha[d] nothing to do with [Appellant.]" *Id*. at 78.

Following the sidebar, the Commonwealth continued to ask Detective Harkins questions about the photo arrays shown to M.B. and Mr. Houston. *Id*. 74-76. Neither defense attorney objected to this testimony. *Id*. at 76. The record contains no indication that either counsel objected to this testimony as bolstering or vouching. Moreover, after Detective Harkins referred to a photo array that had been shown to Mr. Houston, the court gave a limiting instruction to which neither counsel objected. *See id.* at 77-78.

"In order to preserve an issue for review, a party must make a timely and specific objection at trial." ***Commonwealth v. Montalvo***, 641 A.2d 1176,

- 16 -

1184 (Pa. Super. 1994). Failure to do so results in waiver of that issue on appeal. *See* Pa.R.A.P. 302(a) Moreover, Pa.R.E. 103 specifically addresses evidentiary rulings and requires a contemporaneous objection to preserve a claim of error in the admission of evidence and provides, significantly, that a party must "state[] the specific ground" for the objection. Pa.R.E. 103(a)(1).

Since Appellant acknowledged that the photo arrays did not "have anything to do with Appellant," and at no point raised a specific objection to Detective Harkins' testimony as bolstering or vouching, his argument fails to garner relief.

**D**.

Appellant next challenges the sufficiency of the evidence supporting his conviction for First-Degree Murder. Appellant's Br. at 23. Our standard of review of a challenge to the sufficiency of the evidence is well-settled.

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

First-Degree Murder is any unlawful killing committed and the specific intent to kill. 18 Pa.C.S. § 2502(a). To sustain a conviction, "the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the accused was responsible for the killing; and (3) the accused acted with malice and a specific intent to kill." *Commonwealth v. Newton*, 318 A.3d 133, 139 (Pa. Super. 2024). "Specific intent may be formed in an instant, and it can be discerned from the conduct and attending circumstances that show the perpetrator's state of mind." *Id.* (internal citation omitted). *See also Commonwealth v. Jordan*, 65 A.3d 318, 323 (Pa. 2013)(holding premeditation to kill "can be formulated in a fraction of a second.").

"The jury may infer the intent to kill based [on the] use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Poplawski*, 130 A.3d 697, 709 (Pa. Super. 2015).

Here, the trial court concluded that the Commonwealth presented sufficient evidence to support Appellant's conviction of First-Degree Murder. The court stated:

> [Appellant] acted with the specific intent to kill by using a deadly weapon on a vital part of the decedent's body by aiming his gun at the decedent and firing multiple shots while the decedent ran away. Although there were two shooters and only one of their bullets struck and killed the decedent, [Appellant] is liable for First-Degree Murder based on conspirator and accomplice liability. [Appellant] acted in concert with Jaiteh when they both exited the store, stood next to each other, and unloaded several rounds from their firearms in the direction of the decedent.

Tr. Ct. Op., 1/18/24, at 6; **see also** Supp. Tr. Ct. Op., 7/1/24, at 5 (incorporating its January 18, 2024 opinion).

Appellant argues that "there was insufficient evidence to convict for [F]irst-[D]egree Murder because witnesses [M.B.] and Calvin Houston were approximately 185 feet away and, assuming *arguendo* that Appellant shot or was engaged [as] an accomplice, there was justified self-defense or mistaken self-defense because any reasonable person would believe the Decedent [] was attempting to break into the premises where Appellant was located." Appellant's Br. at 25-26 (citing N.T., 8/1/23, at 188, 230-232 (portions of M.B.'s testimony regarding the incident)). Appellant essentially argues that the evidence was insufficient to support his First-Degree Murder conviction because the jury could have found that Appellant acted in self-defense. This argument, however, challenges the weight that the jury placed on the evidence and asks this Court to re-weigh the evidence to reach a different verdict. This we cannot do.

Based on our review, the evidence shows that Appellant, armed with a firearm, followed Mr. Jaiteh out of the store and, after Mr. Jaiteh had already fired one shot, Appellant fired several more shots in the direction of the decedent. The evidence offered in support of the verdict is not "in contradiction to the physical facts [or] in contravention to human experience and the laws of nature[.]" **Widmer**, 744 A.2d at 751. Thus, viewing the evidence and all reasonable inferences in the light most favorable to the Commonwealth as verdict-winner, we conclude that sufficient evidence

supported Appellant's conviction for First-Degree Murder.  Thus. Appellant's insufficiency challenge fails to garner relief.

## D.

In conclusion, having found Appellant's issues meritless, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 7/10/2025